(56 Misc. Rep. 311.)

In re CITY OF NEW YORK.

In re CONDEMNATION OF LANDS IN TOWN OF CARMEL SOUTHEAST AND TOWN OF SOMERS.

(Supreme Court, Special Term, Westchester County. November 7, 1907.)

1. EMINENT DOMAIN—CONCLUSIVENESS OF AWARD.

An award on the condemnation of land by a city will not be set aside for inadequacy or excessiveness, unless it shocks the court's sense of justice, or for technical errors in rulings on evidence, unless the award results in whole or in part from incompetent testimony or is based upon a wrong theory.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 402.]

2. SAME—PRESUMPTION.

    The record in a condemnation proceeding not disclosing a ruling on the city's motion to strike from the record certain testimony, it must be assumed that the commissioners considered the testimony in reaching their conclusion, though after filing their report they made a certificate that the motion was granted; such certificate being a nullity.

3. SAME—EVIDENCE—STRUCTURAL VALUE.

    In a condemnation proceeding, evidence of the structural value of buildings on the lands is inadmissible; the measure of damage as to the improvements being the enhancement of the market value of the land.

4. SAME.

    That there is sufficient competent evidence to sustain awards in a condemnation proceeding will not avoid a setting aside of the commissioners' report, where incompetent testimony admitted substantially affected the awards.

Application by the city of New York to acquire land in the towns of Carmel Southeast and Somers under Laws 1883, c. 490, etc. The corporation counsel moves to set aside the commissioners' report. Motion granted as to part of report, and remainder of report confirmed.

H. T. Dykman, for petitioner.
Frederick S. Barnum, for claimant.

TOMPKINS, J. The corporation counsel seeks to set aside the report on the grounds, first, that the awards are excessive, and, second, that the commissioners proceeded upon an erroneous theory in estimating the value of the lands with buildings thereon and in admitting improper and incompetent evidence respecting the cost and structural value of buildings upon the properties in question. An award will not be set aside for inadequacy, or because excessive (unless the award shocks the court's sense of justice), or for technical errors in the admission or exclusion of evidence, unless the award is the result in whole or in part of incompetent testimony, or is based upon a wrong theory. After a careful examination of the testimony of all the witnesses touching each of the parcels for which an award was made, I am forced to the conclusion that the awards as a whole are more than liberal. A few instances are taken at random:

Parcel No. 25. The average of the estimates of claimant's witnesses is $4,350. The average of the estimates of petitioner's witnesses is $2,050. The award is $3,290, which is in excess of the average of all the estimates combined.

Parcel No. 41. The average of the estimates of the witnesses for the owner is $9,795. The average of the estimates of the petitioner's witnesses is $3,250. The award is $7,890, being nearly $3,000 in excess of the average of all of the estimates of the witnesses on both sides.

Parcel No. 24, in Part. Claim of Daniel J. Rooney and Wife. The average of the estimates made by claimants is $2,366; the average of the estimates of the witnesses for the petitioner is $1,508; while the award is $2,245, or more than $300 in excess of the average of all the six witnesses for both sides.

Parcel No. 47. The average of the estimates of value made by the witnesses for the claimant is about $12,000. The average of the

estimates made by the witnesses for the city is about $2,800. The award is $7,400.

Parcel No. 69. The average of the estimates of the witnesses Murty, Voorhis, and Ganung is about $51,000. The average of the city's witnesses is about $19,500. The award is $40,500, or more than double the value fixed by the city's witnesses.

These instances are sufficient to show the general character of the awards, and seem to justify the petitioner's contention that they are excessive. That fact, however, would not of itself be sufficient to justify the court in setting aside the report; but, in view of these large awards, it is important to inquire whether any incompetent testimony was received by the commissioners, and, if so, whether it had any influence with the commissioners in reaching their determination on the question of values and damages, or whether any erroneous principle was followed in the admission of evidence and the making of awards.

In many instances witnesses for the claimants were permitted to give the structural value or cost of reproducing the buildings. For instance, with respect to parcel No. 27, which was the first case tried, the witness Waite, who was a builder and contractor, and not a real estate expert, after describing the buildings, giving their dimensions, etc., was asked to give the value of the house at the time the petitioner took possession of the whole property, and in answer gave the sum of $1,638.56 as the net total of the value of the house, and on cross-examination he stated that his estimate was based entirely upon what it would cost to reproduce those buildings; the witness adding: "It is figured on what material and labor cost." The witness Horton, at page 76 of the printed testimony, appears to have been permitted, over the objection and exception of the petitioner's counsel, to testify to the value of the lot, with the improvements, exclusive of the buildings.

The testimony of the witness Waite, the carpenter (who disclaimed being a real estate expert), in respect to parcel No. 28, was of the same character as that given respecting parcel No. 27, at folio 497. On cross-examination he said that the estimate of the value of the buildings which he has given on his direct examination, and which had been objected to by the petitioner's counsel, related to the cost of reproduction. At folio 473 we find that this witness was asked on his direct examination for the net value of the house which he had described, and over the objection of the petitioner's counsel was permitted to give the net value of the building, which he arrived at by first estimating "the price of the material which would enter into the construction of a new building" and then deducting 10 per cent. therefrom for depreciation in value on account of the age of the building.

In respect to parcel No. 25, the witness Waite, who again declared that he was not a real estate expert, gave the following testimony against the objection of the petitioner's counsel:

"Q. Did you make an examination of the buildings on this parcel? A. Yes.

"Q. What was the size of the house? A. Main house, 16 feet 4 inches by 24 feet 6 inches, with rear extension 10 feet 8 inches by 13 feet, posts 16 feet

6 inches. There is a front veranda, 4 feet 6 inches, the full width of the house. There is also an inclosed lobby at the rear 3 feet 4 inches by 4 feet. The house has shingled roof and check gutters, three gables, depth of cellar 8 feet 6 inches, thickness of walls, 1 foot 8 inches.

"Q. What is the cost of reproduction of that house?

"Mr. Dykman: Objected to on the ground that the cost of reproduction is no criterion of the value.

"The Chairman: Objection overruled. (Exception.)

"A. $2169.28."

## On cross-examination the following testimony was given:

"Q. Is it not a fact all your estimate amounts to is this: The figures which you have placed here are what you considered the buildings could be reconstructed for, less the condition in which you found them? A. Yes; that is the way I figured, of course.

"Q. You do not pretend to value this as a real estate expert? A. No, sir.

"Q. And the same statement applies to the wall and the well and the pump and the closet? A. Yes.

"Q. What you, as a carpenter or builder, would go there and build them for? A. Yes."

Folios 983, 984, 1,011, 1,012, and 1,013.

The same character of testimony was given by the same witness concerning parcel No. 29, and in this case the witness presented detailed estimates of the items making up the total cost of reproduction, which was offered and received in evidence against the objection of the petitioner. Similar testimony was given respecting parcels Nos. 41 and 24.

Parcel No. 21, which was a plot of ground containing a little more than an acre and a half, had no buildings or improvements upon it, and was situated outside of the village of Brewster. The award was $3,400, and nearly three times as much as the petitioner's witnesses testified it was worth. This property was located in the country, and nearly a mile from the Brewster railroad station, and, while the award seems very large, yet I do not find that any improper evidence was admitted or erroneous principle adopted. The petitioner claims that the commissioners were not justified in basing their valuation of this property upon its availability for building lots; but I find that the petitioner's witnesses, as well as the owner's witnesses, regarded the plot as available and valuable for building lots, and valued it as such. Some of them dividing it into four lots, and others into more, but all seemed to agree that the tract had a market value for building purposes.

In regard to parcel No. 69, the award for which was $40,500, it is claimed by the city that improper testimony was received and an erroneous theory adopted and followed. The witness Adams, on behalf of the owner, declared himself to be a carpenter and builder, and not a real estate expert, and was allowed to give the fair value of the buildings, which he had "examined, measured, and estimated upon," and which he described, and upon cross-examination he stated in substance that he was not a real estate expert when he went to examine the buildings, and that he went there to measure them up and estimate on them, and get the value of the stock, material, and workmanship that was in them, and that he could not tell the market value

of the property as a whole. On cross-examination the following testimony was given:

"Q. But what you mean to give here as your estimate, as I understand you, is what it would cost to put those buildings up last fall, taking into consideration the price of labor, the market price of lumber, and the cartage out to this particular point, or in that neighborhood? A. Yes."

This testimony was received over the objection of counsel for the city. On the further examination of this witness by the chairman of the commissioners, the following questions were asked, and answers given:

"By Commissioner Tierney: Q. And how available these buildings were to this land, how beneficial—did you consider that? A. I don't know as I would consider that. Q. If you put a large hay barn in the center of a hay field, it would be more valuable to that hay field than it would to a corner lot on Broadway? A. Yes; certainly. Q. Did you take these views into consideration in arriving at the value of this building which you have testified to? A. No; I do not know as I did. I estimated the buildings what it would cost to reconstruct them there."

Folios 1,698, 1,701, and 1,702.

And again, in another place in his testimony, this witness repeated that the value which he had given was simply the cost of reproduction. Folio 1,694. A detailed estimate prepared by this witness, and upon which he based his testimony, was offered and received in evidence, and tends to support the claim of the petitioner that the witness had in mind only the cost of reproducing the building.

In this case other witnesses were permitted to give the value of other parts of the structures upon the land. For instance: A mason estimated the cost of reproducing the stonework, and a tinsmith was allowed to give the cost of reproducing the tinwork, so that in all the aggregate of the cost of reproduction given by the witnesses in this manner, without reference to the land, was over $20,000. All of this testimony was received against the objection of counsel for the petitioner. It appears on page 426 of the printed record that the chairman of the commission stated that "the commission would receive the testimony subject to motion to strike out on the part of the city." And it appears on page 542 of the minutes that counsel for the city made a motion to strike from the record all of the testimony of Adams, the carpenter, Thorpe, the mason, and Moses, the tinsmith, on the ground that their evidence was incompetent, improper, and immaterial, and that "the evidence was introduced for the sole purpose of showing the cost in structural value; also on the further ground that the property acquired must be valued as an entirety." And it appears that the commission at that time reserved its decision upon that motion.

It does not appear anywhere in the record that this motion was ever granted, or acted upon in any way by the commission. The report of the commissioners is dated July 16, 1907, and was filed in the office of the clerk of Westchester county on the 17th day of July, 1907, and now it is claimed on the part of the owner of parcel No. 69 that thereafter, and in the month of August, 1907, the commissioners made a certificate, which bears no date, in which they state that the commission did grant the motion of counsel for the city to strike from the

record the testimony above referred to in relation to parcel No. 69, and did strike said testimony from the case. It does not appear, however, when that ruling was made, while the record itself contains no reference to any such ruling, and the certificate referred to was not filed with, nor does it constitute a part of, the proceedings or report of the commissioners. The certificate having been made after the commissioners had signed and delivered their report, and exhausted their powers, it is a nullity, and cannot be regarded as a part of the record now before the court, and for the purpose of this motion it must be assumed that the testimony above referred to, given on the part of the owner of parcel No. 69, was considered by the commissioners in reaching their conclusions, and making their report.

Was the testimony received by the commissioners with reference to the parcels upon which there were buildings, respecting the structural value and cost of reproducing such buildings, competent evidence? Testimony of that general character permeates the whole record of the commissioners, and relates to every parcel, excepting parcels Nos. 21 and 41. In parcels Nos. 47 and 32, while it was sought by the claimants to qualify the witness Waite as a real estate expert, and to show by him the value of the whole property, yet with respect to the buildings the effect of his testimony was to give the present cost of reproducing them, less a deduction for depreciation. So that my conclusion is that the evidence claimed by the petitioner to have been incompetent, and to have afforded the commissioners an improper basis of value and damage, applied to parcels Nos. 69, 27, 28, 25, 29, 47, and 32, and both parts of No. 24.

The rule seems to be now very well settled that the measure of damage is neither the cost of the improvements at the time they were erected, nor their value, nor the present cost of reproducing them, but is, how much have the structures and erections upon the land increased and enhanced its value? Village of St. Johnsville v. Smith, 184 N. Y. 341, 77 N. E. 617, 5 L. R. A. (N. S.) 922. The past or present cost of a building is not a true test of its market value, unless it is shown that its presence has increased the value of the land to that extent. "All know that the cost of improvements on real estate is not a true test of their value in the market. They may, or not, according or circumstances, enhance the value of the property to the amount of their cost. The true question was, what was the value of the property as it then was; not what it cost, but for how much it would sell?" Jacksonville & Southeastern Railway Co. v. Walsh, 106 Ill. 253. To the same effect is the decision in the case of Stauffer v. Cincinnati, R. & M. R. Co., 33 Ind. App. 356, 70 N. E. 543.

The latest decision in this state bearing on the question of the competency of the evidence in question is that of the Appellate Division of the Supreme Court of the First Department, in the Matter of the City of New York (Blackwells Island Bridge), reported in 118 App. Div. 272, 103 N. Y. Supp. 441. That was a proceeding by the city of New York to acquire certain premises as a site for the Blackwells Island Bridge. Commissioners were appointed to estimate and appraise the lands taken for that purpose, and along with other testimony the commissioners admitted and received testimony as to the

structural value of certain buildings, and the court, in reversing an order of the Special Term confirming the report of the commissioners, says regarding this testimony:

"I understand the rule is that a witness may testify as to the market value of a lot of land, and the market value of the lot with the buildings thereon standing. In other words, testimony as to how much the market value of the lot is enhanced by the building standing thereon—what the structural value of the building is—is not competent. A man may purchase a piece of wild land, far from any railroad connection, and thereon may build a magnificent structure. No developments may take place in the neighborhood, and there may be no demand of any kind for the property. In considering the market value of the real estate under such circumstances, it would be obvious that what it had cost to put the building there could not in any way affect the market value of the property as a whole."

This, it seems to me, makes it perfectly plain that a large part of the testimony received by the commissioners relating to the parcels above referred to should not have been received, and was incompetent, and that the commissioners adopted a wrong theory in receiving and considering such testimony.

It is earnestly argued by the learned counsel for the landowners that, aside from this incompetent testimony, there was legal and proper evidence sufficient to sustain the awards. In view, however, of the large amount of evidence of this character received by the commissioners, and relating to so many parcels, I do not feel justified in saying that it did not in some substantial way affect the result. In admitting this incompetent testimony, the commissioners erred in the principle which should have guided them in the receipt of testimony, and that, of itself, requires the setting aside of that part of their report, which makes awards of damages in the cases in which such incompetent testimony was received.

Motion to set aside the report as to parcels Nos. 69, 27, 28, 25, 29, 24 (both parts), 47, and 32 granted; and the report as to parcels 41 and 21 confirmed. Settle order upon notice. The order should provide for the appointment of new commissioners.