In the Matter of Acquiring Title by THE CITY OF NEW YORK, Respondent, to Certain Lands Required for the Approach to Blackwell's Island Bridge.

CATHERINE DUNN et al., Appellants.

**Eminent domain** — evidence of value in condemnation proceedings — when intrinsic or structural value of buildings separate from the land may be proved.

When the state compels a man to give up his land for public use, and permits him to recover, not what he thinks it is worth, but only its fair market value, he should have the right to prove every element that can fairly enter into the question of market value.

When structures are well adapted to the character of the land upon which they are erected, the value of the land is enhanced to the extent of the value of the buildings. In such cases the value of each enters into the total value which must be the measure of the owner's just compensation when his property is condemned for public use.

When buildings have an intrinsic value which must be added to the value of the land in order to ascertain the value of the whole, the owner may prove the value of his land and the value of his buildings separately, and the latter may be established by the cost of reproduction after making proper deductions for wear and tear. The result of adding these two quantities is nothing more nor less than the value of the land as enhanced by the buildings thereon. This is not a conclusive test of market value applicable to all cases, but it is always competent evidence where buildings are well adapted to the land upon which they stand.

*Matter of City of New York*, 133 App. Div. 896, reversed.

(Argued November 8, 1909; decided March 4, 1910.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 25, 1909, which affirmed an order of Special Term confirming the report of commissioners of estimate and appraisal in the above-entitled proceeding.

The facts, so far as material, are stated in the opinion.

*Henry W. Simpson* and *Harry G. Smith* for appellants. The exclusion by the commissioners of the evidence of structural cost of the improvements upon the premises

acquired by the city of New York constituted reversible error. (*People ex rel. C. G. Co.* v. *Wells*, 54 Misc. Rep. 322; 126 App. Div. 944; 193 N. Y. 614; *People ex rel. Powers* v. *Kallfleisch*, 25 App. Div. 434; 156 N. Y. 678; *People ex rel. Clearing House* v. *Barker*, 31 App. Div. 318; 158 N. Y. 709; 179 U. S. 279; *D., L. & W. R. R. Co.* v. *Clapp*, 152 N. Y. 494; *Langdon* v. *Mayor, etc.*, 133 N. Y. 630; *Ettinger* v. *Will*, 184 N. Y. 179.)

*Francis K. Pendleton, Corporation Counsel* (*Thomas P. Noonan* and *Theodore Connoly* of counsel), for respondent. There was no error committed by the commissioners in excluding evidence as to the structural value of the buildings erected on the property taken, as the true theory was, as adopted by the commissioners, the value which the buildings added to the land. (*Matter of Simmons*, 130 App. Div. 350; 195 N. Y. 573; *Matter of N. Y., W. S. & B. R. R. Co.*, 37 Hun, 317; *Vil. of St. Johnsville* v. *Smith*, 184 N. Y. 341; *J. & S. E. Ry. Co.* v. *Walsh*, 66 Ill. 253; *Stauffer* v. *C. R. & M. R. Co.*, 33 Ind. 356; *Schuchardt* v. *Mayor, etc.*, 53 N. Y. 202; *Dupuis* v. *C. & N. W. Ry. Co.*, 115 Ill. 97; *White* v. *C. R. & M. R. Co.*, 34 Ind. App. 287; *Kansas City* v. *Morse*, 105 Mo. 510; *Forney* v. *F., etc., R. R. Co.*, 23 Neb. 465.)

Werner, J. A single question is presented by this appeal, and that is whether an owner whose lands are taken *in invitum* may give evidence as to the structural value of buildings thereon, for the purpose of establishing his total damages. This question, although extremely simple in theory, has proven difficult of practical application to the multiform circumstances in which it arises, and it is, therefore, not strange that the courts have at various times given divergent decisions upon it. In the case at bar the city of New York instituted proceedings to acquire certain lands needed for the approaches to Blackwell's Island Bridge. These included the lands of the appellants situate on East 59th street and Avenue A, or Sutton Place. Upon these lands there were the usual

tenement houses, four and five stories high, constructed of brick and stone, and concededly suitable to the locality. Upon the original hearings the commissioners of estimate and appraisal permitted the appellants to give testimony of the cost of reproduction or structural value of these buildings. The report of the commissioners was confirmed at Special Term, and the city took an appeal, assigning the admission of this evidence as one of the grounds of substantial error. The Appellate Division reversed the order of the Special Term and held that evidence of structural value is not competent in condemnation proceedings. (*Matter of City of New York — Blackwell's Island Bridge*, 118 App. Div. 272.) Upon the re-hearing before the commissioners, the appellants herein again offered evidence of the structural value of the buildings on their land, and this time the evidence was excluded in obedience to the direction of the Appellate Division on the former appeal. Then the commissioners made their second report which was confirmed at Special Term and on appeal affirmed at the Appellate Division. From that decision the landowners have appealed to this court upon the single question whether the evidence offered by them as to the structural value of their buildings was properly excluded or not.

The learned Appellate Division has laid down the rule that, in condemnation proceedings, evidence of the structural value of buildings should not be received, and that the landowner must be confined to proof of the value of his land as enhanced by the value of the structures thereon. This is doubtless the rule applicable to certain cases, but we think it is not, and should not be, a rule of universal application. All proceedings prosecuted under the right of eminent domain are based upon two fundamental facts. The first is that the owner's land is taken from him theoretically against his will, and the second is that the owner is not permitted to fix his own price, but must be content with just compensation. The latter is a burden to which the owner must submit, but it is also a right which he may enforce. What is just compensation? In

some cases the value of expensive structures may not enhance the value of the land at all. An extremely valuable piece of land may have upon it cheap structures which are a detriment rather than an improvement. A man may build an expensive mansion upon a barren waste, and, in such a case, the costly building may add little or nothing to the total value. In the greater number of cases, however, when the character of the structures is well adapted to the kind of land upon which they are erected, the value of the buildings does enhance the value of the land. In such cases it is true that the value of the land as enhanced by the value of the structures is the total value which must be the measure of the owner's just compensation when his property is condemned for public use. As to that general proposition there can be no disagreement. But how is the enhancement of the land by the structures which it bears to be proven ? If all buildings were alike, the rule laid down by the Appellate Division would be one of convenient and universal application. It is common knowledge, however, that buildings not only differ from each other in design, arrangement and structure, but that many which are externally similar and are situate upon adjoining lands, are essentially different in the quality and finish of the materials used and in the character of the workmanship employed upon them. It must follow that such differences contribute in varying degrees to the enhancement in the value of the land, and we can think of no way in which they can be legally proved except by resort to testimony of structural value, which is but another name for cost of reproduction, after making proper deductions for wear and tear. This may be by no means a conclusive test as to the market value of premises condemned for public use. But that is not the question at issue. The question is whether evidence of structural value is competent to show market value, when the buildings are suitable to the land. There are instances, of course, when precisely similar buildings upon identical parcels of land may have the same potential market value just as the price of commodities like cotton, flour or potatoes is

regulated by the law of supply and demand without reference to cost of production in particular cases. When that is true, the market value may be the value of the land as enhanced by the value of the buildings, without reference to structural value. But when a building has an intrinsic value, which must be added to the value of the land in order to ascertain the value of the whole, the owner may not be able to establish his just compensation unless he is permitted to prove the value of his land as land and the value of his buildings as structures. By adding to each other these two quantities the result is really the value of the land as enhanced by the buildings thereon. In valuing real estate for purposes of taxation the state resorts to the cost of improvements for the purpose of ascertaining the value of the land. (*People ex rel. Cons. Gas Co.* v. *Wells*, 54 Misc. Rep. 322; affd., 126 App. Div. 944 and 193 N. Y. 614; *People ex rel. Powers* v. *Kalbfleisch*, 25 App. Div. 432; affd., 156 N. Y. 678; *People ex rel. N. Y. Clearing House Bldg. Co.* v. *Barker*, 31 App. Div. 315; affd., 158 N. Y. 709.) By analogy it would seem that when the state compels a man to give up his land for public use, and permits him to recover, not what he thinks it is worth, but only its fair market value, he should at least have the right to prove every element that can fairly enter into the question of market value.

The court below cites our decision in *Village of St. Johnsville* v. *Smith* (184 N. Y. 341) in support of the rule that in condemnation cases evidence of structural value of buildings is not admissible, and it quotes from the concluding passage of Judge Willard Bartlett's opinion, in which he said: "In holding, as we do, that the appellant is entitled to have the improvements made upon his land by the respondent while a trespasser taken into consideration in ascertaining his compensation, it must be distinctly understood that the measure of such compensation is neither the *cost* of the improvements *nor their value or the value of their use to the village.* The true inquiry is how much do the improvements placed upon the property enhance the value of the appellant's land." (p. 350.)

The language used by this court in that case has no application to the question here under consideration. The statement therein made, that the measure of compensation to which the village was entitled was neither the cost of the improvements nor their value or the value of their use to the village, but that the true inquiry was how much did the improvements enhance the value of the land, involved no intimation as to the character of the evidence which should be received in order to ascertain the extent of such enhancement. There was nothing in our opinion in that case which affirmed or disaffirmed the admissibility of evidence as to the cost or structural value of the buildings.

That the learned court below further misapprehended the scope of our decision in the *St. Johnsville* case becomes more evident by the statement of a few additional facts. The village of St. Johnsvile had wrongfully trespassed upon the lands of Smith, and had constructed thereon a reservoir and laid pipes for the purpose of obtaining a supply of water for village purposes. After this had been done the village instituted condemnation proceedings, and the commissioners made an award to Smith which excluded from consideration the structures thus wrongfully placed on Smith's land. Upon Smith's appeal the Appellate Division affirmed the order made upon the report of the commissioners. When the case came to this court, it was held that Smith was entitled to recover the value of his land as it was when the condemnation proceedings were instituted. That, of course, included the structures which had theretofore been wrongfully erected thereon by the village. But the structures were of a peculiar kind. They consisted of a reservoir and water pipes. The cost of these was obviously much greater than any sum which they could possibly add to the value of Smith's land, if indeed they could be said to enhance it at all. These were the conditions which doubtless led Judge WILLARD BARTLETT to qualify his statement of the general rule, and to limit its application to the peculiar facts of the case. The general rule to which he referred is, that when a naked trespasser makes improvements

upon the lands of another, such improvements become the property of the owner of the land, and this is true even where the trespasser subsequently seeks to acquire the land by condemnation. In such a case the owner is entitled to the value of the land with the improvements. But in Smith's case the cost of the structures built upon his land by the village would have been much more than just compensation, for it was largely in excess of any value which it added to the farm. The distinction between the *St. Johnsville* case and the case at bar is plain. In that case the structures were not adapted to the land or the locality. They were elaborate and costly, but they added nothing, or at least very little, to the value of the Smith land as a farm. The cost of building a reservoir and laying conduits was one thing. The value which they added to the farm was quite another thing. In the case at bar the houses were concededly suitable to the land and the locality. The land and the houses had a natural and appropriate relation to each other for the purpose of ascertaining the value of the whole. The actual value of the houses was a constituent element of the total value, and for that reason evidence of structural value should have been received.

When the dissenting opinion of our brother Chase is closely analyzed, it will be seen that the very procedure for which we contend may be indirectly pursued under the rule which he advocates. He admits that an expert may, upon cross-examination, be interrogated as to his qualifications, and that, by this means, the value of the structures and the value of the land may be separately proven in order to test the accuracy of the witness in stating the value of the land as enhanced by the structures. Why may not such testimony be controverted by the direct testimony of other witnesses who arrive at different conclusions as to the separate values of the land and the structures upon it? We know of no rule which forbids such procedure. In condemnation proceedings the question of value is not a collateral issue, but is usually the main issue. If that may be done, it is obvious that the direct result for which we contend may always be accom-

plished by indirection. It may be well to repeat, therefore, that the difference between us is fanciful rather than real. We all agree that the ultimate question is, what is the value of the land as enhanced by the value of the structures upon it? We disagree simply as to the method by which that question shall be solved. Our contention is that the expert who testifies to the value of the whole may also give his views as to the separate values of the constituent parts. Our brother CHASE argues that this may not be done directly, but he admits that the same end may reached by cross-examination. With all deference, we submit that this is a highly technical refinement which is more calculated to produce confusion than justice in condemnation proceedings.

*Matter of Simmons* (195 N. Y. 573) is cited as holding that in condemnation proceedings evidence of structural value is inadmissible. There were two distinct proceedings under that title affecting separate parcels of land and two appeals from separate orders. Upon the hearings before the commissioners in those cases evidence of structural value was admitted in one case under objection and exception and in the other the same kind of evidence was excluded. The lands there in question were farms, with buildings of small value, and in both cases witnesses were permitted to testify that the buildings upon the lands enhanced their value in different degrees. The cases were decided at Special Term at the same time with many others of like character. In this court the two appeals were argued as one, although separate briefs were submitted. The main contention, and practically the only one made by the appellants, was that the commissioners should have received testimony tending to establish the value of the lands for reservoir purposes, which was vastly greater than their value for farm purposes. We affirmed the orders of the court below without opinion. It is the well-established rule that courts of review will not disturb the determination of commissioners in condemnation proceedings for mere errors in the admission or exclusion of evidence, unless the commissioners have proceeded upon a wrong theory to the prejudice of one

of the parties.   The commissioners view the premises, and in coming to a conclusion as to value they may take into consideration the knowledge thus acquired in connection with the oral evidence produced before them.   That the courts in the *Simmons* cases acted upon this rule is shown by the fact that, although there were diametrically contrary rulings upon the same kind of evidence, they did not consider the matter of sufficient importance to reverse either of the determinations there involved.   In the proceeding at bar, however, the situation is different.   The land involved is improved city property of considerable value.   Upon the appeal from the first award the Appellate Division reversed, and one of the grounds of reversal was the admission of evidence of structural value.   Upon the second hearing such evidence was excluded and the award of the commissioners has been sustained.   The claimants have now appealed for the sole purpose of obtaining a decision upon this question whether evidence of structural value is admissible in proceedings of this character.   We think the courts below erred in excluding the evidence.   Ordinarily we would not reverse for such an error, but as this appeal was taken for the express purpose of settling this question, upon which the courts have long been at variance, we deem it necessary to reverse the orders herein, so that the rule may be finally and definitely settled.

We refrain from discussing the decisions in other jurisdictions because they are not uniform, and it would serve no useful purpose to dwell upon them at length.   We conclude that reason and principle alike support the admissibility of such testimony as was excluded in the case at bar.

The orders of the Appellate Division and Special Term should be reversed and the matter remitted to the latter court for further proceedings before the same or new commissioners, with costs to the appellants.

CHASE, J. (dissenting).   The lands sought to be acquired in the proceeding are entire lots of land owned by the appellants in severalty for which they are entitled to just compen-

sation.   The measure of just compensation when the whole of specified pieces of land is taken for a public use under the power of eminent domain is the market value of such lots of land.   The buildings and structures on the lands so to be taken are a part of the lands and are to be included, as such in determining the market value thereof.   The buildings and structures on appellants' lands are suitable to the locality and the lands including the buildings and structures have a market value.   The question presented on this appeal is not complicated by other questions relating to damages sustained by the appellants to other lands adjoining the lands taken in the proceeding.   Neither is it confused because the lands sought to be taken are covered by unusual or peculiar structures which make it impossible for the owner to obtain evidence of the market value thereof.   The question before us is whether in a case of the condemnation of ordinary real property having a market value evidence of the structural value of the buildings thereon can be given when wholly disconnected with the market value of the lands sought to be taken.

The market value of land, including the improvements thereon, is a question of fact which is determined to a large extent from the testimony of persons specially qualified by experience and knowledge to express an opinion as to real estate values.   Before a person is allowed to express an opinion as to the market value of real property his experience and knowledge must be shown at least sufficiently so that his opinion is entitled to some weight.   After a witness has expressed an opinion as to such market value he can, on cross-examination, be asked any question affecting the extent of his information and knowledge upon the subject about which he has expressed the opinion.   Such a cross-examination may properly include any reasonable question relating to the property, its location, extent, and the elements that go to make up its value.   The price at which it has been purchased, the rentals therefrom or its productiveness, and the materials of which the buildings are erected, are proper subjects of such cross-examination.

In showing the qualifications of a person produced as an expert witness upon the market value of land, it is within the reasonable discretion of the court or commission to allow on his direct examination such questions as are proper on the cross-examination of such witness for the purpose of showing the weight to be given to the testimony about to be given by such witness.

The rulings of which the appellants complain in this case did not arise in an effort by them to show that a proposed witness was qualified to give testimony as to the market value of the real property sought to be taken in the proceeding. They called as a witness a carpenter and builder and attempted to show by him the structural value of the buildings on the property sought to be condemned entirely apart from the value of the land, and entirely apart from any intention of subsequently obtaining from the witness an estimate of the value of the land, together with the buildings thereon. The witness expressly stated that he was not a real estate expert and that he was not familiar with the value of the land. He further testified that in making his proposed estimate he did not pretend to give the amount that the buildings add to the value of the land, but only the structural value of the buildings in the condition in which he found them without taking the land into consideration at all. The evidence was excluded. The ruling of the commissioners was in accordance with many decisions of the trial courts and the Appellate Divisions in this State. The following are some of such decisions: *Matter of Long Island R. R. Co.* (6 T. & C. 298); *Matter of N. Y., W. S. & Buffalo R. Co.* (37 Hun, 317); *Matter of Trustees of Village of White Plains* (124 App. Div. 1); *Matter of City of New York* (118 App. Div. 272); *Matter of City of New York (Town of Carmel)* (56 Misc. Rep. 311); *Matter of Simmons* (58 Misc. Rep. 607; *S. C.*, 130 App. Div. 350). (See *Devou* v. *City of Cincinnati*, 162 Fed. Rep. 633.)

This court in *Village of St. Johnsville* v. *Smith* (184 N. Y. 341), referring to the compensation to be made for certain improvements constructed upon lands sought to be con-

demned, say : " It must be distinctly understood that the
measure of such compensation is neither the *cost* of the
improvements *nor their value or the value of their use to the
village.* The true inquiry is how much do the improvements
placed upon the property enhance the value of the appellant's
land." (p. 350.) It is urged that this decision was made in
a case where the improvements were not placed upon the land
by the owner thereof, but by the municipality which sought to
condemn the land. I do not see any distinction in the ques-
tion referred to in the *Village of St. Johnsville* case and the
question in the case before us. The improvements put upon
the land in that case became the property of the owner of the
land to the same extent as if they were placed thereon by the
owner. As the improvement placed thereon became a part
of the land and the unconditional and unqualified property of
the owner of such land, they, like the buildings of the appel-
lants, were a part of the private property taken for public use
to which the owner was entitled to just compensation.

The measure of the appellant's compensation, as stated in
the *Village of St. Johnsville* case, is neither the cost of the
buildings nor their value, but the market value of the land
enhanced as it is by the buildings thereon.

This court has also passed upon the question adversely to
the appellants' contention in the case entitled *Matter of Sim-
mons* (195 N. Y. 573). That case includes an appeal in two
cases similarly entitled. Each was a proceeding to acquire
lands by the power of eminent domain. In one of the proceed-
ings some evidence of structural value was received against the
objection of the corporation counsel. The corporation counsel
moved for the confirmation of the report notwithstanding the
admission of such evidence. (*Matter of Simmons*, 58 Misc.
Rep. 581, 590.) The question as to the structural value was
not before the Special Term, the Appellate Division or this court
on that appeal. In the other of said appeals it was directly
before the court for consideration and determination. A wit-
ness was asked a question as follows : " Now will you state in
your opinion what the structural value of the house and various

other structures were that you found on the property .at the time you examined it." This question was put to a building expert, and it was objected to upon the ground that structural value is not evidence of market value, and the objection was sustained. When that proceeding came up for confirmation at the Special Term the decision of the commissioners was sustained, and an opinion was written by Justice BETTS which is reported in 58 Misc. Rep. 607. The opinion is principally devoted to a discussion of the question of the admissibility of evidence of the structural value of buildings on the property sought to be condemned. In the opinion he says: "The authorities all seem to be one way in this State, which is, that evidence of structural cost or value, as offered in these cases and excluded by the commissioners on objection of the city, is not admissible." (p. 613) An appeal was taken from the order of confirmation to the Appellate Division, where the order was affirmed. The opinion of the court was written by Justice SEWELL and is reported in 130 App. Div. 350, from which I quote as follows: "It is unnecessary to discuss the question whether the commissioners erred in refusing to permit the owner to show the value of the structures upon the land further than to say that it is the market value of the land with the buildings and other improvements thereon that is the measure of compensation. The buildings put upon the land are simply adjuncts to the freehold. They add to its value and are properly included in an appraisal of it, but it is the value of the land and structures which is to be determined and not the cost of them. For these reasons it has been held that testimony of the structural value of buildings is not competent in proceedings of this kind." (p. 353.)

An appeal was taken from the order of affirmance in the Appellate Division to this court and the question of structural value among others was discussed orally in this court and submitted upon printed briefs and the order of the Appellate Division was unanimously affirmed.

The appeal in the *Simmons* case from the order included in the decision of this court, reported in 195 N. Y. 573, and

which is reported in 58 Misc. Rep. 607 and 130 App. Div. 350, like the appeal in the case now before us, was from an order affirming an order confirming the report of the commissioners in a condemnation proceeding in which the question of structural value was directly involved. If the testimony was improperly excluded the error was equally serious in the two proceedings. If we reverse the judgment in this case we will place upon our records decisions that are wholly antagonistic and contradictory.

I am of the opinion that upon principle and upon authority, including the cases mentioned from this court, the commission was right in excluding the evidence offered on behalf of the appellants in this proceeding.

It may be assumed, without deciding that evidence of structural value should be admitted in some peculiar and unusual cases where other and better evidence cannot be obtained, and that it is admissible to test the information and knowledge of a person presented as an expert upon the question of market value, but evidence of structural value except as stated should be excluded as it does not in itself show the amount even in part of just compensation and it tends to an unsafe and improper estimate of damages.

In the discussion of the *St. Johnsville* case in the prevailing opinion it is substantially admitted that evidence of structural value of the improvements upon the lands in that case would be inadmissible and what is there said tends to emphasize how improper and unsafe evidence of structural value is in all condemnation proceedings where general evidence of market value can be obtained.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., WILLARD BARTLETT and HISCOCK, JJ., concur with WERNER, J.; HAIGHT and VANN, JJ., concur with CHASE, J.

Orders reversed, etc.