Caroline K. Simon, J.
This claim arises out of the permanent appropriation and the acquisition of a temporary easement over claimant’s land, the easement taken including acquisition of title to the structures and improvements situated thereon, in connection with the construction of the Broadway-Nott Terrace Arterial Highway, Veeder Avenue Section, in the City and County of Schenectady, pursuant to sections 30 and 349-c of the Highway Law. The fee taking is described as Map No. 32, Parcel No. 42 and the easement taking is described as Map No. 33, Parcel No. 43. The parties stipulated that the aforesaid maps were filed in the Schenectady County Clerk’s office on March 26,1963. The court adopts the description of the appropriated property and the property acquired for a temporary *666 easement as shown on the maps and descriptions filed in the Schenectady County Clerk’s office, copies of which are attached to the claim and the same are incorporated herein by reference. Claimant filed its claim with the Clerk of the Court of Claims and the Attorney-General on April 3, 1963.
Claimant derived title to the subject property by reason of a deed dated June 22, 1960 from Ann J. De Paula and Thelma B. Morsillo, as grantors, to the claimant, said, deed having been recorded in the Schenectady County Clerk’s office on June 24, 1960 in Liber 798 of Deeds at page 587. The deed by its terms was made subject to an institutional mortgage recorded in 1958 and on which there was an unpaid principal balance of $22,528.45 on the date of conveyance.
Prior to the within taking's the subject property consisted of an irregular lot of improved land of approximately 0.169± acres or 7,376 square feet with a frontage of 67 feet on the south side of Veeder Avenue, extending to a depth of 99 feet on its easternmost boundary and to a depth of 135 feet on its westernmost boundary. The lot was on level grade with the sidewalk on which the Veeder Avenue frontage abuts at the front and then sloped on an upgrade to the rear, which measured 22 feet in length, the estimated grade at the rear then being approximately 4 feet. The property is situated in an “F” Business District Zone, which permits the widest possible variation in commercial use.
The subject property was improved with a solid brick two-story structure having a flat built-up roof and full basement, and a three-car masonry garage rented on a monthly basis. The principal building was 25 feet across the front with a depth of 60 feet and had a ground area of 1,560 square feet or a total area of 3,120 square feet. Although the principal building was over 70 years in age, the entire first floor and basement area had been completely rebuilt and renovated in 1958 to provide functionally excellent first-floor professional office space, almost half of which was utilized by the attorney of record herein as his law office, the remainder of the first-floor area being rented partly to another attorney and partly to a.sales organization. Renovation of the interior of the building included installation of acoustic tile blocks in all first-floor ceilings; installation of mahogany wood paneling in all offices and connecting hallways; installation of composition tiles on all floors; installation of modern fluorescent ceiling light fixtures with perimeter indirect lighting; and installation of individual speakers in each office connected. to a central electronic system for both radio and phonographic equipment located in the connecting hall. The *667 outside front entry had been reconstructed with ledge stone, iron railings and double doors of aluminum and plate glass. Two half-baths situated on the first floor were also renovated. The photographs of the first-floor space introduced by claimant warrant the opinion of claimant’s appraiser that the entire first floor was “ eminently attractive ” and both physically and functionally in excellent condition.
The second floor of the premises consisted of eight rooms in fair condition and rented to individual roomers on a monthly basis, in which rooms light housekeeping was permitted. Both sides were in accord that the second-floor -area was underutilized and that its renovation into office space would yield a sounder economic return than that obtained prior to the within takings.
The remainder outside area not occupied by the principal building and garage had been paved with blacktop and provided five parking spaces, each of which was rented on a monthly basis.
Both sides were in accord that the property was situated in the highly developed downtown business and financial section of the City of Schenectady, and that it was unusually well located for the conduct of a law practice since the property lies directly across the street from the recently constructed Schenectady County Office Building adjacent to which the renovated County Judiciary Building is situated.
The court finds on the undisputed testimony of both experts that the highest and best use of the subject property before the taking was its then existing partial use as professional and business office space, and that subsequent to the takings its highest and best use will be for commercial development.
The within takings resulted in the appropriation in fee of 0.096± acres or 4,190 square feet of claimant’s land and the acquisition of 0.049± acre or 2,160 square feet of said land for a temporary easement including title to the structures and other improvements heretofore noted, which structures and improvements were demolished to enable defendant to proceed with the construction of the arterial highway. The temporary easement runs across the entire front of claimant’s remainder parcel, 0.024± acres or 1,026 square feet in dimension, and is situated to the rear of claimant’s original lot and has not as yet been relinquished. In that connection the Attorney-General was unable to provide the court with any firm future relinquishment date. Because of its present location and topography, the rear of the remainder parcel being at least 10 feet above street grade, the court finds that the within takings have rendered the remainder parcel unsuitable for commercial development, its potential highest and best use, since it was conceded by defendant’s *668 appraiser that a retaining wall would have to be constructed around the perimeter of the remainder area to realize that use and because the topography and size of the remainder of the plot make it difficult to use economically as a building site, though the court recognizes its excellent location continues to be an asset. Therefore, the court has accorded the actual remainder parcel a nominal value of $100.
In so doing, the court is mindful of the standard reservation clause contained in the description annexed to defendant’s easement appropriation map, and the recent interpretation of that language by the Appellate Division, Third Department, in Wolfe v. State of New York (23 A D 2d 136). However, the court finds that case distinguishable from the one at bar, in that loss of access is not the only item of consequential damage to claimant’s remaining easement land. The easement was acquired for purposes of demolishing the existing structural improvements situated on claimant’s original lot, and the rear portion of claimant’s principal building lay across the easement land and was in fact demolished along with the other improvements. Moreover, and of particular significance, defendant’s after-valuation of the remainder land was predicated on the assumption that a hypothetical three-story office building could be constructed on the combined easement land and present remainder area with enough additional outside space to permit parking essential in conjunction therewith. This assumption rests on the further assumption that the defendant’s Department of Public Works would authorize the construction of such an improvement under the language contained in the aforesaid reservation clause. Since the defendant retains the right to revoke any authorization provided therein, the court concludes that the license granted therein to “ use ” the land in the manner contemplated by defendant’s appraiser is economically of no value since no prudent purchaser would undertake the substantial costs of constructing such an improvement, estimated by defendant’s appraiser to exceed $60,000, plus the cost of building the retaining wall required as a prerequisite to such construction, until the claimant had clear title to the easement land, which will not be available until the filing of a certificate of termination. In any event, reliance on the hypothetical future use envisioned by defendant’s appraiser without proof that purchasers could be found who would pay more for the property because of its adaptability to such use is conjectural and of little probative value.
The court recognizes the direction contained in Wolfe (supra), to the trial court upon remand to permit the defendant to stipu *669 late as to the use to be made of the easement land. In this ease full opportunity was provided defendant by the court during the course of the trial to stipulate as to whether authority would be given to permit uninterrupted access to Veeder Avenue and to permit the construction of any contemplated improvement over claimant’s remaining land, but such opportunity was not availed of by defendant.
Because of the present status of the temporary easement and the problematical timing of its relinquishment, the court has limited its award to the fair rental value of the easement to the date of entry of judgment since the period of occupancy cannot be ascertained. However, this determination is made without prejudice to future proceedings in which the claimant may recover the fair rental value of the easement to the date of the filing of a certificate of termination by defendant’s Department of Public Works. (Pomeroy v. State of New York, 18 Misc 2d 377.)
For purposes of evaluating the damages to claimant’s premises attributable to the within takings, the court has adopted the capitalization of income approach rather than the alternative reproduction cost less depreciation approach, each of which methods was utilized by both sides. Although the structural improvements were well adapted to the land on which they were erected and enhanced the value of the land (Matter of City of New York [Blackwell’s Is. Bridge], 198 N. Y. 84), the improvements were not, in the court’s view, unique, or constructed for a special type of use, so as to fall within the definition of a specialty and thus justify reliance upon the cost method of evaluation. The fact that the property was only partially rehabilitated and was zoned for virtually unlimited commercial use reinforces this conclusion. The further fact that defendant chose to rely on such a valuation theory does not, ipso facto, cure the error and permit the court to predicate its award thereon. (Guthmuller v. State of New York, 23 A D 2d 597.)
Focusing attention first on the valuation of claimant’s land the court has adopted defendant’s evaluation of $10,900 as being the fair market value of the land itself on the appropriation date; which sum may properly be added to the fair market value of the structural improvements derived from the capitalization of actual rental income figures relied upon by claimant’s appraiser to yield an amount that will meet the requirements of “just compensation”. (City of Schenectady v. Lauricella, 9 A D 2d 996.) The court has rejected the traditional before and after valuation method of evaluation since the unusual circumstances established by this record make such an approach inap *670 propriate and obviate the need to make separate findings with respect to direct and consequential damages.
The court, in adopting claimant’s rent schedules based on actual rents derived from the improvements, accepts claimant’s annual gross rental figure of $7,428 as both fair and economically justified, and has rejected defendant’s much lower figure of $5,916 as predicated on an unrealistic evaluation of available rentable space. However, the court is in accord with defendant’s position that the expense schedule should reflect an adequate allowance for total insurance, maintenance and a reserve for replacements, and adopts the total sum of $350 set by defendant for these items in addition to taxes of $877 and heat and light of $600, about which figures there is no dispute. The court also has adopted a 10% nominal reserve for vacancies applicable to the total income derived from the eight second-floor rooms rented on a transient residential basis, or $2,880, which yields the sum of $288. Defendant’s inclusion of a 6% management allowance has been rejected as unjustified since the bulk of rentable space is occupied by the landlord-owner, the president of the corporate claimant. The addition of these figures yields a total expense figure of $2,115, which when subtracted from the gross rental figure of $7,428 yields a net rental figure of $5,313. The court has rounded this figure off to $5,315. Interest on land value of $10,900 previously noted at the rate of 6% yields the sum of $654 which, when applied to the net income figure, makes a total income figure imputable to the improvements of $4,661. The court finds that the capitalization rate of 9% employed by claimant is more realistic than the 10%. rate employed by the defendant in view of the unique location of the premises and the renovation of the first-floor area of the principal building which justified the expert opinion that the building had a 40-year economic life. (See Matter of City of New York [A & W Realty Corp.], 1 N Y 2d 428.) Capitalization of imputable net income at 9% yields a capitalized value of the improvements in the sum of $51,778, which the court has rounded off to $51,780. This total, when added to the land value of $10,900, yields a total value of land and improvements in the sum of $62,680, which claimant is entitled to as an award with appropriate interest. The court further awards claimant the sum of $565 to compensate for the temporary appropriation of its land from March 26, 1963 to the present, without prejudice to further proceedings to permit additional recovery to the termination date of the easement.
The court has viewed the premises with representatives of both sides and has predicated its findings in regard to valuation on its viewing, the extensive photographs introduced by claimant *671 to depict the condition of the improvements prior to the instant takings, and its evaluation of the expert testimony introduced by both sides in relation to all facets of proof and including the over-all development potential of the subject property.
The court awards claimant the sum of $63,245 for all damages attributable to the instant takings with interest thereon from March 26,1963 to the date of entry of judgment herein.
The award to claimant herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer and railroad lines.