Harold P. Kelly, J.
This proceeding is brought by the City of Buffalo pursuant to the Charter of the City of Buffalo and the General Municipal Law, to take by eminent domain, lands in fee within the City of Buffalo to effectuate an Urban Renewal Plan; namely, Waterfront Redevelopment Project No. U.R.N.Y.R.-35 pursuant to Item No. 2 C.C.P., October 22, 1963, as set forth in the petition herein.
The lands to be taken in this proceeding are more particularly described as Parcel 23, Block “ K-l ” and Parcel 24, Block “ K-l ” as shown on a map entitled “ Property Map ‘ K ’ ” Project Waterfront Redevelopment and more particularly described as follows: [The description of the property has been deleted.]
The court without a jury heard testimony in this proceeding on April 21, 1968, April 22, 1968 and April 23, 1968 and viewed the premises on June 21, 1968.
Upon the evidence adduced, I find that William Dechert & Son, Inc., is the owner of the above-described premises by reason of either title acquired by deed or by adverse possession; in that William Dechert & Son, Inc., or its predecessor in title had occupied, used and possessed all of the premises and had enclosed part of the premises by a substantial wire fence for the prescribed period of time. (CPLR 212; Real Property Actions and Proceedings Law, §§ 521, 522.)
The premises are situate on the east side of River Street in the City of Buffalo, New York and are commonly known as 29 and 31 River Street. - Although the front brick buildings abut against each other, they have a fire wall that separates them and in order to come from one building to the other, it is necessary to go outside. No. 31 River Street contains a two-car garage, an office, storage area and a drafting room on the second floor. The rear frame buildings on said premises are suitable for storage of supplies and tools. No. 29 River Street is suitable for and used for storage of supplies and tools and also contains a two-car garage. Both premises have a total combined frontage of 51 feet and according to the survey made by Roy J. Straley, defendant’s Exhibit A, has a depth of 174.06 feet on the north side and 180.32 feet on the south side, or an average depth of 177.19 feet and contains 9,036.69 square feet of land.
*872 From the testimony of the witnesses and by comparable sales of lands submitted, it is the opinion of the court that the fair and reasonable market value of the land would be $1.93 per square foot or a total value of $17,440.81.
Although No. 29 River Street and No. 31 River Street have a separate and different title history, until the property was acquired by the present owner; it is the opinion of the court that for the purposes of awarding compensation, both parcels should be considered as an entity. The premises have been used as a unit and improvements to the buildings have been made as though they were one structure; such as the installation of one heating unit for both buildings; toilet and office facilities have been designed for use by both buildings. Further it is doubtful that either premises would ever be offered on the market as a separate sale, but would probably bring the highest price when sold together.
The court finds that the highest and best available use of the subject premises is for a plumbing and heating business which is in accordance with its M-l industrial zoning.
Both the city and the claimant have used the same three methods of arriving at market value; namely, capitalization of income, market data and reproduction cost less depreciation. Some of the evidence adduced by both the city and the claimant is of little probative value because of the failure to disclose or substantiate the foundation for the assumption of certain testimony, such as the city’s appraiser assuming a projected square foot land value of 75 cents and a 40-cent square foot rental for the buildings on the subject premises. It is the opinion of the court that there is enough probative evidence adduced so that a determination of just compensation can be had.
The following quote from Wagner v. State of New York (25 A D 2d 814) is of particular significance in a case such as the present one: ‘ ‘ That the value arrived at by the trial court was not as testified to by either expert, and that it rejected valuations fixed by both experts, does not invalidate the award. ‘ It is almost invariably the case that the value, and hence what compensation is found to be just, is not the figure claimed by either the claimant or the city and advanced by their respective experts. The Court is not bound to choose between these figures and select one of them based on an evaluation of the capabilities or the character of the respective experts. ’ (Matter of City of New York [Maxwell], 15 A D 2d 153, 161, affd. 12 N Y 2d 1086.) ”
The court has received evidence of the reproduction cost less depreciation from both parties. It is the opinion of this court that this type of evidence is admissible, even though the build *873 ings are not classified as a specialty, where other evidence, of value is testified to, such as the capitalization of income and comparable sales. (Matter of City of New York [Blackwell's Is. Bridge], 198 N. Y. 84; Matter of Huie [Fletcher — City of N. Y.], 2 N Y 2d 168; Matter of Bd. of Water Supply, 277 N. Y. 452.) If reliance is placed solely on evidence of reproduction cost less depreciation, the structure must be classified as a specialty; that is designed for a unique purpose in order to receive such evidence. (Matter of City of New York [Maxwell], 15 A D 2d 153, 170-171, affd. 12 N Y 2d 1086; Matter of City of New York [De Nigris Realty], 20 A D 2d 42, affd. 14 N Y 2d 935; Guthmuller v. State of New York, 23 A D 2d 597.)
If reproduction cost less depreciation of the subject buildings on the premises were the only evidence to be considered by the court, there is little doubt that the weight to be given the evidence adduced by the defendant would be almost controlling since the supporting evidence of the plaintiff’s expert on reproduction cost was of very little, if any, evidentiary value, whereas the defendant’s supporting evidence was of a considerable probative value. (City of Buffalo v. Frontier Ind. & Mar. Supply Corp., 30 A D 2d 636.)
But as pointed out above, reproduction cost less depreciation can he utilized in a case such as this where the buildings are not a specialty, in conjunction with other proof. In this case, in the opinion of the court, the capitalization of income and comparable sales of land offered by both parties have the most value in arriving at a determination of just compensation to be awarded the defendant.
The defendant has moved to strike out the testimony of the city’s appraiser as to his comparable sales on the grounds that this testimony is hearsay. The problem raised by this motion is examined in depth in 12 ALB 3d 1064. Not one New York case is cited in this article and this court is unable to find a New York case that deals with this problem on all fours in condemnation cases. The New York courts have permitted the experts to testify to comparable sales based on information that was supplied to them by other persons and obtained from sources outside the courtroom.
The Special Buie of the Appellate Division, Fourth Department relating to the Exchange of Appraisal Beports in Proceedings for Condemnation, Appropriation and Beview of Tax Assessments, pursuant to CPLB 3140 (eff. Jan. 1,1968) requires the service of a copy of the appraisal to he used on trial on the other party not later than 20 days before the date set for trial. Subdivision (b) of this Special Buie provides that, “If sales, *874 leases or other transactions of comparable properties are to be relied on, they shall be set forth with such particularity as to permit the transactions to be readily identified
This Special Buie is obviously designed so that the other party shall have adequate time to examine into the accuracy of the comparable sales and the other facts stated in the appraisal, which would not be necessary if the persons who had actual knowledge of the sales were required to be produced as witnesses. It should be remembered that the reason our highest court refused to accept proof of comparable sales in condemnation cases until Village of Lawrence v. Greenwood (300 N. Y. 231) was because of the fear that the trial would be confused by opening up collateral issues if proof of comparable sales was admitted. It is therefore the opinion of this court that proof of comparable sales can be based on information obtained by the expert from other people and sources outside the courtroom are admissible as long as they are set forth in his appraisal as required by the above set forth portion of the Special Buie of the Appellate Division. One other point that would lead to the admissibility of such testimony is the fact that all expert opinion testimony by necessity is founded in part upon knowledge obtained by the expert witness from outside sources and is always to some degree hearsay evidence.
It is the conclusion of this court that testimony of the details of comparable sales by the expert witness even though it is hearsay may be permitted for the purpose of showing the basis of the expert’s opinion and not as substantive evidence of these sales.
The accuracy of the expert’s testimony concerning the comparable sales can be developed on cross-examination in view of the fact that the opponent will be advised at least 20 days prior to trial what comparables will be used by the witnesses under the Special Buie.
The court believes that if the subject premises were rented they would be rented to one tenant rather than a number of tenants renting part of the premises. Therefore the probabilities are that in arriving at a rental, the owner and the tenant would probably utilize one rental price per square foot for the brick buildings rather than a different rental for the office space, storage area in the brick buildings and a lesser rental for the frame buildings. Taking the comparable rentals testified to by the claimant’s appraiser and the city’s appraiser, it is the opinion of the court that a fair rental for the brick buildings would be 80 cents per square foot and for the frame building, 40 cents per square foot, which would produce a gross rent of $4,634 per *875 year if we use the area of buildings as set forth in the plaintiff’s survey.
The court in computing the value of the, premises by the income approach used the following expenses: Taxes — $191.89; Insurance — $195; Maintenance — $125; Vacancy (10%) — $463.40. Total expenses of $975.29 deducted from gross rent leaves a net annual rent income of $3,658.71. From which the sum of $1,046.45, (an allowance of 6% interest must be allowed on the land value — $17,440.81), must be subtracted to arrive at a net income of $2,612.26 to be imputed to the improvements. The court believes that this net of $2,612.26 should be capitalized at 16% (6% interest plus 10% return of capital) which would equal $16,326.62 for the value of the improvements.
The above rental is based on the premises being rented to a plumbing concern with the shelving and bins included as part of the above rents. No allowance for management was used because the owner would most certainly perform this service. (Matter of City of New York [Maxwell], 15 A D 2d 153, affd. 12 N Y 2d 1086, supra).
By adding the value of the land, $17,440.81, to the value of the improvements, $16,326.62, the court finds that just compensation for the premises to the defendant, William Dechert & Son, Inc., is in the sum of $33,767.43.
The foregoing award is subject to all unpaid franchise and real estate taxes, water bills, sewer rentals and any liens and incumbrances against the premises at the time of taking title by the City of Buffalo as provided by law.