THE VILLAGE OF ST. JOHNSVILLE, Respondent, *v.* DANIEL
SMITH, Appellant, Impleaded with Others.

1. VILLAGES — WATER WORKS — RESERVOIR CONSTRUCTED UPON
LAND BEFORE CONDEMNATION PROCEEDINGS ARE HAD AND COMPEN-
SATION AWARDED TO OWNER, CONSTITUTES A TRESPASS. Where the
authorities of a village, not only without the consent of the owner, but
against his express command and remonstrance, entered upon his lands
and constructed thereon an intake or reservoir for the village water
works and laid pipes for conducting water to and from the reservoir,
before instituting condemnation proceedings, such entry and invasion
is clearly tortious, the village and its agents being mere trespassers,
notwithstanding a survey had been made and a map of the land and
water rights proposed to be taken had been filed under the statute
then in force (L. 1875, ch. 181, § 5, as amd. by L. 1885, ch. 211 and
L. 1895, ch. 383); since the mere making and filing of the map did not
empower the village to take possession of the premises described therein
and erect a water plant thereon; it is only after condemnation proceed-
ings have been had and confirmed by the Supreme Court and the com-
pensation awarded to the landowner has been paid or deposited in court,
that the village becomes entitled to take and hold the property (L. 1875,
ch. 181, § 6, subd. 8, as amd. by L. 1885, ch. 211); the only entry which
the statute authorizes to be made before condemnation is "for the pur-

pose of making surveys and to agree with the owner" as to the amount of compensation. (L. 1875, ch. 181, § 4, as amd. by L. 1885, ch. 211 and L. 1895, ch. 383.)

2. SAME — AWARD TO OWNER, MADE AFTER CONSTRUCTION OF RESERVOIR SHOULD INCLUDE VALUE OF CONSTRUCTION AND WORK PLACED UPON LAND. Where condemnation proceedings were subsequently instituted and an award was made to the owner for the land and water rights taken by the village, in which the commissioners of appraisal expressly declared that, in making the award, they made no allowance " for the value of the pipe, the intake basin or the superstructure covering the same nor for any of the work or construction placed upon the appraised premises  *  *  *, or for any enhanced value of the premises by reason of such construction having been placed thereon," such award is erroneous, since the landowner is entitled to have the value of the structures placed upon his premises by the village, without authority of law, before the institution of the condemnation proceedings, considered by the commissioners of appraisal in arriving at their determination as to the compensation which ought justly to be made to him by reason of the taking of his lands.

3. SAME — RULE FOR ASCERTAINING MEASURE OF COMPENSATION. In ascertaining the compensation to be awarded, the measure of such compensation is neither the cost of the improvements nor their value or the value of their use to the village; the true inquiry is how much do the improvements placed upon the property enhance the value of the owner's land.

*Village of St. Johnsville* v. *Smith,* 90 App. Div. 618, reversed.

(Argued February 7, 1906; decided March 27, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 11, 1904, which affirmed a final order confirming the report of commissioners in condemnation proceedings.

The facts, so far as material, are stated in the opinion.

*Clark L. Jordan* for appellant. The award of the commissioners was inadequate. The commissioners should have awarded the defendant the value of the structure placed upon his lands by the plaintiff, without any right or authority, in addition to the damages sustained by him in the taking of his land and water rights. (Reeves on Real Prop. § 47 ; *Matter of N. Y., W. S. & B. R. R. Co.,* 37 Hun, 317 ; *McAllister* v. *N. Ins. Co.,* 156 N. Y. 80 ; *Van Size* v. *L. I. R. R. Co.,* 3 Hun, 613 ; *U. S.* v. *Monterey Co.,* 47 Cal. 525.)

*Edward R. Hall* for respondent.   The award made by the commissioners was adequate and they did not err in refusing to allow the appellant for the value of the pipes, the intake basin or the superstructure covering the same, or the construction placed upon the appraised premises by the respondent or for any enhanced value of the premises by reason of such construction having been placed thereon by respondent. (*Matter of S. L., etc., R. R. Co.*, 66 Hun, 306; *B., R. & M. R. R. Co.* v. *Bernard*, 9 Hun, 104; *Vil. of Champlain* v. *McCrea*, 165 N. Y. 264; *Justice* v. *N. V. R. Co.*, 87 Penn. St. 28.)

WILLARD BARTLETT, J.   This is a proceeding in behalf of an incorporated village to acquire certain lands and water rights of the appellant for the purpose of obtaining for the village an additional supply of pure and wholesome water. It was instituted in 1896, before chapter 181 of the Laws of 1875, entitled "An act to authorize the villages of the State of New York to furnish pure and wholesome water to the inhabitants thereof," had been repealed by the Village Law (Chap. 414 of the Laws of 1897, taking effect July 1, 1897), and hence was regulated by the act of 1875 and the amendments thereof in force at the time, and by the provisions of the Condemnation Law (Code Civ. Proc. chap. XXIII).   An answer to the petition was interposed by the appellant and others; the issues were referred to a referee, who determined them in favor of the petitioner;   commissioners were appointed who awarded $500 to the appellant for the property and rights belonging to him which were sought to be acquired, and the report of the commissioners was confirmed at Special Term by a final order, which has been unanimously affirmed by the Appellate Division.

Upon this appeal a number of objections are made to the validity and regularity of the proceeding which we do not deem it necessary to discuss further than to say that we regard them as untenable, and we find no error in the record justifying the interference of this court, save in respect to the action of the commissioners in estimating the value of the property taken.

The original petition was verified on May 26, 1896, and it is stipulated by the parties that it was served on the appellant on or before June 1, 1896.   It is apparent, therefore, that the proceeding cannot be regarded as having been instituted before May 26, 1896.   As early as September 25, 1895, however, the authorities of the village of St. Johnsville had commenced to construct an intake basin and lay pipes on the lands of the appellant, which it desired to condemn, and the work was so far completed that water was turned into the pipes and taken for the use of the village on October 25, 1895, while the superstructure over the basin and other work by the village on such lands was completed by the 16th of January, 1896.

Neither the reservoir nor the piping nor any portion of the structures thus placed upon the premises of the appellant were taken into consideration by the commissioners in estimating the value of the land upon which they had been located. · The commissioners make this perfectly clear in their report where they expressly declare that in fixing the appellant's compensation at $500 they do not make any allowance "for the value of the pipe, the intake basin or the superstructure covering the same nor for any of the work or construction placed upon the appraised premises by the plaintiff, or for any enhanced value of the premises by reason of such construction having been placed thereon· by the plaintiff."

It is conceded that the appellant forbade the entry upon his land; and the engineer who supervised the work for the village testified that he understood that whatever was done was done in opposition to the will of Mr. Smith.   There is a statement in the brief for the respondent to the effect that "apparently he subsequently consented," but we can find no sufficient basis in the evidence for any such inference.   In disposing of the appeal we think it must be treated as an established fact that the invasion of his property by the village was not only without the consent of the appellant, but against his express command and remonstrance.

Under these circumstances, we think that the landowner was entitled to have the value of the structures thus placed upon

his premises by the village, without authority of law, before the institution of the condemnation proceedings, considered by the commissioners of appraisal in arriving at their determination as to the compensation which ought justly to be made to him by reason of the taking of his lands.

The invasion of the appellant's property was clearly tortious, the village and its agents being mere trespassers. (*Matter of St. Lawrence & Adirondack R. R. Co.*, 133 N. Y. 270.)   It is true that a survey and map, as provided by section 5 of the statute (Chap. 181, Laws of 1875, as amended by chap. 211 of the Laws of 1885) had been made and filed prior to this entry, showing the appellant's land and water rights which the board of water commissioners of the village intended to acquire ; but the mere making and filing of this map did not empower the village authorities to take possession of the premises described therein and erect a water plant thereon.   It was only after a determination by commissioners of appraisal fixing the compensation which ought justly to be made to the landowner, and after a confirmation of their report by the Supreme Court, and upon payment or deposit of the sum fixed as compensation that the village became entitled to take and hold the property.   (Subd. 8 of section 6 of chap. 181 of the Laws of 1875, as amended by chap. 211 of the Laws of 1885.)   The only entry which the statute authorized to be made before condemnation was " for the purpose of making surveys and to agree with the owner " as to the amount of compensation.   (Chap. 181, Laws of 1875, § 4, as amended by chap. 211, Laws of 1885, as amended by chap. 383, Laws of 1895.)   The entry and occupation here were obviously of a very different character, the appropriation of the premises to the uses of the village being as absolute and permanent as it could ever become upon the successful completion of condemnation proceedings, before any petition in such proceedings had even been verified.

The question which arises here has twice been considered by the Supreme Court at General Term — first in *Matter of Long Island R. R. Co.* (6 Thomp. & Cook, 298) in the second

department, and later in the fourth department in *Matter of N. Y., West Shore & Buffalo Ry. Co.* (37 Hun, 317).

In the first of these cases the railroad company, before instituting proceedings to condemn, laid its tracks upon the appellant's land. The appellant sought to prove before the commissioners that the entry was made without the owner's consent and claimed compensation for the increased value created by the improvements which the railroad had made by laying its tracks upon the land. The court held that the commissioners erred in rejecting the evidence offered to establish the entry without consent and the value of the improvements made by the trespasser, saying : " We are of opinion that the railroad company, if they entered without consent, were trespassers as to the then owner   *   *   *   and that any fixtures they placed on the land, while their occupation was that of trespassers, belong to the owner who is such at the time of making the valuation." As to the method in which the damages were to be ascertained, the court added : " In making such proof we do not understand that the value of each tie and rail is to be determined ; the railway track composed of rails and ties is a fixture of the land and its value as a fixture enhancing the value of the land for the beneficial enjoyment thereof is the measure of compensation."

In the second case cited the gist of the decision is contained in the following extract from the opinion of Mr. Justice BOARDMAN: " Any structure wrongfully placed upon the lands by the railway company became by that act a part of the land and entered into its value. The case tends to show that the railway company entered upon the lands in question without right or authority from the owners and built the road in part thereon. The property so put upon the land added to its value and was properly included in the appraisal as property of the landowners to be taken by the railroad company."

We are of opinion that these cases were correctly decided and that the rule of law therein applied entitles the appellant in the case at bar to a new appraisal. This rule has been recognized and enforced by the courts of other states. The

case of *United States* v. *Land in Monterey County* (47 Cal. 515) was a proceeding commenced by the Federal government in 1870 to acquire lands in California for lighthouse purposes. In 1854 the United States, by its agents, entered upon the lands sought to be condemned and erected a stone building for lighthouse purposes thereon.. This was done against the will of the owners. At the trial they offered evidence in regard to the value of the structure, claiming that inasmuch as it had been tortiously affixed to the freehold its value should be considered in determining the compensation to which they were entitled. The Supreme Court of California held that this evidence was erroneously excluded. "There can be no doubt," said WALLACE, Ch. J., "that upon the general principles of law the defendants, as being owners of the fee, are also owners of the improvements and fixtures actually annexed to the soil and these become a part of it. If one erect buildings upon the land of another voluntarily, and without any contract, he may not remove them. This is common learning. The law did not authorize the United States to take possession of these lands *manu forti*, and their agents in entering upon them and ejecting the defendants were mere tort feasors."

In *Graham* v. *Connersville, &c., R. R. Co.* (36 Ind. 463) it was held that where a railroad company, without having acquired the right so to do, had in advance of condemnation proceedings entered upon the land subsequently sought to be · condemned and erected a depot and hotel thereon, these buildings became the property of the landowner and should have been included in estimating the value of the property when the damages were assessed. "If this rule seems to savor of hardship," said the court, "the company has no one to blame but itself for not having avoided its application."

The doctrine thus asserted is stated by Mills in his well-known treatise on the Law of Eminent Domain as follows: "A trespasser is not entitled to any benefit for improvements made on the land during the time of his occupation. Houses erected on the land of another belong to the owner, without

compensation to the party erecting, except where legislatures have granted relief to those who have made improvements on land in good faith, believing they had good title.    The rule follows that all erections belong to the owners, and cannot be removed by the parties placing them there ; and hence, on a subsequent condemnation, the value of the land, with the structures also, must be paid." (Mills on Eminent Domain [2d ed.], § 148.)    Lewis, however, another text writer of ability, declares that the cases which we have cited "proceed upon a strict and technical rule of the common law, that structures placed upon land by a trespasser become a part of the realty and cannot be removed," and he refers to a considerable number of decisions in other jurisdictions to the effect that "the owner in a proceeding to ascertain the just compensation is not entitled to the value of the works placed upon the property, though without right, for the purpose of adapting the property to the public use intended."    (2 Lewis on Eminent Domain [2d ed.], p. 1144.)    The scope and effect of the group of cases sustaining this proposition is accurately stated by Mr. Carman F. Randolph, of New Jersey, in a still more recent work on this branch of the law, where he says : " The broad ground is taken that while an irregular entry for public use is a technical trespass, yet the title to improvements should not vest in the owner because the possession can be legitimated by lawful proceedings, and for the broader reason that the improvements themselves are not intended to be adjuncts to the freehold, but are made simply to subserve a use in which the landowner has no interest." (Randolph on Eminent Domain, p. 222.) *Justice* v. *Nesquehoning Valley R. R. Co.* (87 Pa. St. 28) is typical of the class of cases which give countenance to this view.

We are quite clear that it should not receive the sanction of the courts of this state.    So far as actual intent is concerned, a personal trespasser who annexes a structure to another's freehold does not mean that it shall become the property of the landowner any more than does a trespassing railway company or municipality which does the same thing

in contemplation of acquiring the land at some future time by the exercise of the power of eminent domain. The law affixes the consequences to the act, not the intent. It says to those who invoke the power of eminent domain as well as to all others: If you invade land without legal right and place structures of a permanent character thereon, those structures belong to the landowner. There is no more harshness in applying the rule to one class of trespassers than to the other. In both cases its application tends to prevent the perpetration of a wrong. Its operation in this state has been, and will undoubtedly continue to be most salutary in constraining those municipal and other corporations which the state has authorized to exercise the power of eminent domain not to assume the possession of lands in advance of any right so to do, and thus practically nullify, during the period of unlawful possession, that provision of the Constitution which guarantees the citizen against being deprived of his property for public use without just compensation.

The difference is obvious between a clear case of trespass like that before us and a case in which after a lawful entry, followed by improvements upon the land, the occupant finds it necessary to institute condemnation proceedings by reason of a doubt as to the title or for the extinguishment of liens upon the property. "It may be assumed as the law," said Mr. Justice CULLEN in *Philadelphia, R. & N. E. R. R. Co.* v. *Bowman* (23 App. Div. 170), "that where a railroad company lawfully enters into possession of premises and thereafter institutes condemnation proceedings to cure a defective title, or extinguish the lien of a mortgage or other incumbrances, the measure of compensation is not enhanced by the improvements placed by the railroad company on the land," although he adds that even this proposition is not authoritatively settled in this state. But further on in the opinion the rule in this state, as in California, is declared to be that the improvements go to the landowner, where a railroad company has entered without his permission, as a mere trespasser; and the land-

owner is entitled to compensation for such improvements in a proceeding to condemn.

There is nothing in *Matter of St. Lawrence & Adirondack R. R. Co.* (66 Hun, 306), cited in the respondent's brief, which affects the question under consideration. Section 3379 of the Code of Civil Procedure (which is a section in the Condemnation Law) provides that at any stage of a proceeding to condemn, the court may authorize the plaintiff, if in possession of the property sought to be condemned, to continue in possession upon giving such security or depositing such sum of money as the court may direct. The General Term in the case cited recognized the construction put upon that section by this court in *Matter of St. Lawrence & Adirondack R. R. Co.* (133 N. Y. 270), where it was held not to apply to a railroad company which had entered upon land under no claim or pretense of right, in defiance of the will of the owner, under no mistake or misapprehension and without color of authority; and the General Term then proceeded to hold that possession was properly allowed to continue upon giving security under section 3379 where it appeared to the Special Term that the plaintiff had not acquired such possession by a trespass or without color of claim.

In holding, as we do, that the appellant is entitled to have the improvements made upon his land by the respondent while a trespasser taken into consideration in ascertaining his compensation, it must be distinctly understood that the measure of such compensation is neither the *cost* of the improvements *nor their value or the value of their use to the village*. The true inquiry is how much do the improvements placed upon the property enhance the value of the appellant's land.

The orders of the Appellate Division and the Special Term should be reversed, with directions to appoint new commissioners of appraisal to determine the appellant's compensation in accordance with this opinion, with costs in all courts to appellant.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT and VANN, JJ., concur; CHASE, J., not sitting.

Ordered accordingly.