BEAR GULCH PLACER MINING CO. v. WALSH.
In re KIMBERLY-MONTANA GOLD MINING CO.
(District Court, D. Montana. August 16, 1912.)

No. 178.

1. BANKRUPTCY (§ 210*)—JURISDICTION OF BANKRUPTCY COURT—ADVERSE CLAIMS TO PROPERTY.

A court of bankruptcy has ancillary and exclusive jurisdiction to hear and determine all adverse claims to property in the possession of a trustee in bankruptcy as a part of the assets of the estate which he is administering, but not to determine conflicting claims to a water right.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321–323; Dec. Dig. § 210.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. BANKRUPTCY (§ 212*)—PETITION BY ADVERSE CLAIMANT—LAND TAKEN BY BANKRUPT FOR A PUBLIC USE—POWER OF COURT TO AWARD DAMAGES INSTEAD OF PROPERTY.

Under the statutes of Montana, by which property taken for mining and milling ores is for a public use, and may be condemned by an individual or corporation for such use, where a bankrupt mining company had built an electric light and power plant for use in its business on the land of another, and the plant has come into possession of its trustee, on the filing of a petition by the owner of the land in the bankruptcy court to recover the land and the plant thereon, the trustee may defend on the ground that the taking was for a public use, and the court may permit him to retain the property for the estate, and may fix the compensation to be paid petitioner for the land.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 236; Dec. Dig. § 212.*]

3. EMINENT DOMAIN (§ 133*)—TAKING OF PROPERTY WITHOUT CONDEMNATION
—RULE OF DAMAGES.

Where property is taken for a public use without condemnation and the payment of compensation, but in good faith and in reliance on negotiations or condemnation proceedings then pending, the rule of damages is the same as in cases of condemnation before taking, and the improvements made thereon are not to be taken into consideration, and especially is such the rule where the owner of the land appeals to equity for relief.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 358–361½; Dec. Dig. § 133.*]

In the matter of the Kimberly-Montana Gold Mining Company, bankrupt. On petition by the Bear Gulch Placer Mining Company to recover property in possession of M. J. Walsh, trustee. Decree for petitioner in part.

E. C. Day, of Helena, Mont., for complainant.

Walsh & Nolan, of Helena, Mont., for respondent.

BOURQUIN, District Judge. This purports to be a suit in equity, brought December 6, 1909, in this court sitting in bankruptcy, wherein complainant, a citizen of Montana, seeks to establish and quiet its title to an electric power and light plant erected, without consent, by the above-named bankrupt, a citizen of Arizona, upon one of complainant's group of placer claims owned in fee, to the land covered thereby, and also to a water ditch, all of which are in defendant's possession as assets of the bankrupt's estate. The bill further seeks to establish the priority of complainant's right to use the waters of a certain Bear creek, over a like right claimed by defendant as an asset of said estate.

Defendant challenged the jurisdiction of the court by demurrer, and, the same being overruled, answer and replication were filed, evidence submitted before an examiner, and final hearing had. In the main, the controversy presents the aspect of a suit to quiet title; the usual relief being prayed.

[1] In so far as the property involved is in possession of defendant as trustee in bankruptcy and as assets of the estate, the bankruptcy court has ancillary and exclusive jurisdiction, independent of statute, to hear and determine all adverse claims involving title and possession or control of the property. All courts of competent jurisdiction, when they have taken possession of property through their officers—sequestrators, receivers, trustees, or other officers—have like jurisdiction. They will not permit their possession to be disturbed by process of any other court, and in connection with that possession will not permit their own process to be abused. Hence the said jurisdiction to hear and determine adverse claims to such property. Murphy v. John Hoffman Co., 211 U. S. 568, 29 Sup. Ct. 154, 53 L. Ed. 327; Krippendorf v. Hyde, 110 U. S. 283, 4 Sup. Ct. 27, 28 L. Ed. 145; Wiswall v. Sampson, 14 How. (U. S.) 65, 14 L. Ed. 322. The proceedings are not to be treated as independent and original, for as such the bill could not be maintained to quiet title to property

in defendant's possession, but as merely ancillary to the bankruptcy proceedings and the bill as merely a petition therein, asserting and seeking determination of a claim to property in custody of the court. Cases cited.

In such proceedings the bankruptcy court has full jurisdiction to render a final judgment or decree binding the parties. There is jurisdiction to determine complainant's adverse claim to the electric plant, the land covered thereby, and the ditch, but none in respect to the water rights, in that complainant's water right is not in possession of defendant, and so not in custody of the court. A right to the use of the waters of a stream is a right to divert the water so far as and when necessary for a beneficial use. Any number of persons may be vested with such rights, though aggregating many times the flow of the stream. They may or may not ever actually clash in user. Those first in time are first in right; but, when the first appropriator's needs are served, subsequent appropriators can supply their needs in order of time. There is no property or right in water until it is diverted. The right itself is incorporeal, and, to the extent that it may be possessed, the possession is in the owner thereof.

Complainant is in possession of its right; defendant is in possession of the bankrupt's right. The jurisdiction to determine priority between them is not in the bankruptcy court by virtue of the rule aforesaid, nor does the bankruptcy statute confer it. Jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, were by said statute, when this proceeding was initiated, vested in the Circuit Court (concurrently with state courts), save for certain exceptions not material here. To determine the priority of these water rights involves a "controversy in equity" in its nature to quiet title, and not a "proceeding in bankruptcy." It is an independent matter, to be determined in an original suit, properly in the state courts or in the federal court if jurisdiction it otherwise has. See Bardes v. Bank, 178 U. S. 525, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Bankr. Act July 1, 1898, c. 541, §§ 2, 23, 60, 67, 70, 30 Stat. 545, 546, 552, 553, 562, 564, 565, 566 (U. S. Comp. St. 1901, pp. 3420, 3431, 3445, 3449, 3451). The bankruptcy court has no jurisdiction to adjudicate the priority of said water rights, no more than it would have to quiet complainant's title to any other realty in its possession, and to which the defendant as trustee asserted an adverse claim.

[2] The ditch involved seems in definite and larger part to have been constructed by complainant and leased by the bankrupt. To that extent it is the property of complainant. The electric plant and part of the attached water pipe are upon land owned in fee by complainant. To said plant complainant claims title by virtue of the following provision of the laws of Montana, viz., Rev. Codes, § 4572:

"When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as provided in section 4578, belongs to the owner of the land, unless he chooses to require the former to remove it."

198 F.—23

Section 4578 applies to tenant's fixtures. Section 4572 is merely declaratory of the common law. The electric plant was erected pending condemnation proceedings for its site and for the ditch right of way. The ditch lease being secured, said proceedings were held in abeyance. The plant was completed and operated in mining and milling ores. Thereafter the proceedings were improvidently dismissed, probably by mistake.

It appears the plant cost about $25,000, is reasonably necessary for power and light for mining and milling purposes, and its site is more necessary therefor than for complainant's placer purposes. The land involved seems unsuited for placer operations, has no known value for its placer contents, and if complainant's placer operations are resumed (having been suspended for 24 years, its facilities and appliances fallen into decay, and most, if not all, of its ground of promise forfeited and patented to others) they will not be materially, if at all, hampered by the location of the plant and pipe line.

Defendant asserts the bankrupt's right to in effect condemn in these proceedings, and offers to pay such damages to complainant therefor as will be inflicted upon it thereby. Complainant resists. Electric power and light plants, mining and milling ores, are "public uses" in Montana. Complainant and the bankrupt possess the power of eminent domain, and both of them intend or claim the site of the plant involved for "public use."

Whether or not the bankrupt's secondary franchise is vendible, and the title thereto as "property" passed to the trustee in bankruptcy, whether or not the trustee can exercise the power of eminent domain by virtue of such franchise, or by virtue of being vested with the bankrupt's title to said plant designed for a "public use," is not necessary to decide. But, since individuals in Montana may condemn for a "public use," it is clear that, being vested with title to said plant, the trustee can assert by way of defense herein, even as the bankrupt otherwise could, the right to maintain the plant and its site on payment of compensation and damages, for the protection of the estate, the creditors, the bankrupt, and the public interest in the use involved therein.

Where the power to condemn exists, it should be exercised before, but may be exercised after, taking. If taken without condemnation, the owner may resort to any appropriate action to vindicate his right to the property, and therein the taker may defend, in that the taking was for a public use; the owner recovering compensation and damages, instead of the property. Complainant resorting to equity to vindicate his right in the property taken, this court has jurisdiction to finally adjudicate the amount of unpaid damages, and to direct that the defendant retain the property, provided the damages are paid. 5 Pom. Eq. § 473.

The court will so decree here. The evidence is clear that the bankrupt did not erect the plant in willful disregard and defiance of complainant's right of property, but in reliance upon the tacit permission of the local agent of complainant, in contemplation of a subsequent

arrangement, which agent, however, had no authority to bind his principal therein, and in reliance upon said condemnation proceedings.

[3] Where property is taken and improved for public use before condemnation and compensation made, not in willful trespass, or improper motive, or defiance of the owner's right of property, but in good faith, relying on negotiations or condemnation proceedings then pending, the rule of damages is the same as in cases of condemnation and compensation made before taking, and the improvements so made are not to be taken into consideration. Searl v. Lake Co., 133 U. S. 553, 10 Sup. Ct. 374, 33 L. Ed. 740. See Chase v. Jemmett, 8 Utah, 231, 30 Pac. 757, 16 L. R. A. 805, the note, and cases cited. See Village, etc., v. Smith, 184 N. Y. 341, 77 N. E. 617, 5 L. R. A. (N. S.) 922, and case note, 6 Ann. Cas. 379; 15 Cyc. 763, 995. More especially is this the rule when the owner of the land taken subsequently appeals to equity for any relief in connection therewith. "He who asks equity must do equity."

The defendant, amongst other proof, submitted proof of the land necessary for the power plant and attached pipe line. The area is 2.03 acres. There is no evidence of the value, and of the damages, if any, to the remainder of complainant's land, save that, in so far as values are testified to, it is that at the power house and pipe line the land has no value for any purpose, but defendant is willing to pay $100 per acre for that taken. Complainant seems to have ignored the issue altogether; its theory apparently being that no such issue was involved, and that in any case it was the owner of the improvements and entitled to a decree accordingly.

Any attempt to estimate the damages, would be merely speculative, and, unless the parties agree thereon, the court will proceed to a hearing upon the question of damages. Either party may request an issue framed thereon for submission to a jury.

Decree accordingly.