. MILLBROOK COMPANY, Respondent, *v.* EDWARD V. GAMBIER
and SAMUEL MERIDITH STRONG, Appellants.

First Department, March 23, 1917.

Contract — agreement to purchase lands with agreement·to pay rent
during occupancy if title of vendor fails — vendee in possession liable
for rent although vendor has no title.

Where a contract for the sale of land, as to which the vendor's title as trus-
tee was doubtful, provided that in case the title failed the vendee, who
was acting for a railroad company in acquiring rights of way, should pay
rent for the lands from the date of the contract until condemnation
proceedings were commenced, and it developed that the vendor had no
title and merely occupied the legal position of a mortgagee, the rent
agreed to be paid by the vendee should be deducted from the amount of
the earnest money paid, where the assignee of the vendee sues to recover
the same because of the failure of title.   This, because the contract of sale
had a dual aspect in that it also partook of the character of a lease pend-
ing the passing of title, and hence the plaintiff became obligated for rent
so long as it occupied the lands under the contract.

A tenant cannot escape the payment of rent during the period of his occu-
pancy by alleging a defect of title in his lessor.

SHEARN, J., dissented, with opinion.

APPEAL by the defendants, Edward V. Gambier and another,
from a judgment of the Supreme Court in favor of the plain-
tiff, entered in the office of the clerk of the county of New
York on the 22d day of April, 1916, upon the decision of the
court after a trial at the New York Special Term.

*Emory R. Buckner,* for the appellants.

*Ralph Polk Buell,* for the respondent.

SCOTT, J.:

The facts upon which this appeal comes on for hearing are
very carefully and correctly stated by Mr. Justice SHEARN and
it will not be necessary to restate them.   The contract between
plaintiff and the defendant Gambier presented a dual aspect.
It was not only a contract for the sale of real estate, but it also
partook of the character of a lease pending the passing of the
title.   At the time this contract was made Gambier claimed to

have, and apparently had, both the record and the legal title to the property which the plaintiff desired to acquire for its right of way. That it afterwards transpired that the deed under which he claimed was only a mortgage is of no consequence. It is quite evident that plaintiff desired to take immediate possession of the property, and it is clear that it was contemplated when the contract was made that Gambier's title might prove to be defective for the agreement to pay rent was expressly conditioned upon the happening of that contingency. Plaintiff went into possession in recognition of Gambier's right to give it possession, and whatever right to possession it acquired was derived from its contract with him, and under his apparent title.

In this state of affairs plaintiff expressly agreed that " in case of failure of title " it should pay to Gambier rent at the rate of $2,400 per annum. The title did fail — the condition upon which plaintiff was to pay rent happened, and under the plain terms of the contract plaintiff became obligated to pay the rent for so long as it occupied the property under its contract with Gambier.

This obligation the plaintiff expressly recognized in its letter to Gambier of May 25, 1910, in which it admitted that it owed him the rent for eight months. How long the obligation to pay the rent would have continued under the circumstances it is unnecessary to consider for Gambier on December 31, 1909, by his attorney, undertook to declare the agreement forfeited. The plaintiff was entitled to take him at his word, and contract with the real owners as it shortly after did. I can see no grounds upon which plaintiff can escape allowing Gambier the agreed rent for the period named in view of the express language of the contract and the happening of the very contingency upon which it was agreed that rent should be paid. Furthermore it is thoroughly well settled that a tenant cannot escape the payment of rent during the period of its occupancy by alleging a defect of title in its lessor.

The judgment appealed from should be modified by deducting from the $4,000 claimed in the complaint the sum of $1,800 representing the rental at the agreed rate from March, 1909, to December, 1909, and granting plaintiff judgment for the

balance, with interest from January 1, 1910, and as so modified be affirmed, without costs in this court.

CLARKE, P. J. PAGE and DAVIS, JJ., concurred; SHEARN, J., dissented.

SHEARN, J. (dissenting):

The judgment under review, on the appeal of the defendant Gambier, granted plaintiff's prayer for relief in a suit in equity brought to procure, on the ground of mistake, the rescission of a contract made March 8, 1909, between defendant Gambier and others on the one side and plaintiff's assignor on the other, and to recover upon such rescission the sum of $4,000 paid to Gambier under the contract.

On and prior to March 8, 1909, the New York, Westchester and Boston Railroad Company was engaged in the construction of its railroad in Westchester county, and plaintiff's assignor, the City and County Contract Company, referred to herein as the Contract Company, a domestic business corporation, was engaged in purchasing the right of way for and constructing the railroad. A parcel of land traversed by the located line of the railroad company, through which a right of way was required, appeared upon the title record to be held by the defendant Gambier, "trustee," under a deed dated January 3, 1903, made by one Lilla A. Green, the first wife of one Charles H. Green. Lilla A. Green died November 9, 1905. These were the circumstances under which the record title was put in the name of Gambier as trustee: In January, 1903, Gambier was assistant cashier of the Merchants' Exchange National Bank. One of the customers of the bank was the aforesaid Charles H. Green. Green was interested in the Hektograph Company, in the interest of which he borrowed money from the bank. To secure the repayment of these advances, amounting to more than $10,000, Green on January 3, 1903, delivered to the bank's employee, Gambier, the deed above referred to, executed by Lilla A. Green, then his wife and the record owner of the premises. Green died in July, 1908, survived by his second wife, Louise B. Green. The bank's loans to Green remained unpaid and its employee, Gambier, continued to be the record holder of the

said premises conveyed to secure the bank. Prior to the death of Green, however, Gambier himself became interested in the Hektograph Company and, with certain associates, advanced to Green from time to time sums amounting to $13,500. Accordingly, on May 30, 1908 (a few weeks before Green's death), a "trust instrument" was executed by Green and Louise B. Green, his second wife, purporting to convey all of the rights and interests of Green and his second wife in the property which had already been conveyed to Gambier, trustee, by Green's first wife, and declaring that such conveyance by them was for the purpose of securing the repayment to Gambier of advances made by him, subject to the prior claim of the bank for its advances. It further provided that "Any equity remaining in the property after the satisfaction of the claims of the said Merchants' Exchange National Bank of the City of New York and Edward V. Gambier to revert to the Hektograph Company."

In this state of the title the Contract Company undertook to purchase a right of way through the premises and to secure immediate possession to facilitate construction. Gambier, as was correctly found at Special Term, stated to the Contract Company that as such trustee he owned, had title to, and the right of possession of the real estate in question. This was not true either in fact or law, Gambier being a mere mortgagee out of possession, as was subsequently decided by the Court of Appeals in litigation to which Gambier was a party. (*Strong* v. *Gambier*, 215 N. Y. 690.) This misstatement of Gambier's, which, however, is not claimed to have been fraudulent, is the foundation upon which the judgment appealed from is based, for the contract rescinded and the payment ordered restored were, as the court has found, based upon this mistake about Gambier's title and his right and ability to deliver possession.

During the negotiations for the right of way conferences took place between the attorney for the Contract Company and the attorney for Gambier, and both the original deed from Lilla A. Green to Gambier as trustee and the "trust agreement" signed by Charles H. Green and Louise B. Green were submitted to the Contract Company's attorney, and the Contract Company knew, as the court has found, that there were certain dis-

First Department, March, 1917.          [Vol. 176.

putes regarding Gambier's title to the real estate. After these conferences, and after Gambier's statement that he had title and the right to possession of the property, it was agreed that Gambier, Louise B. Green and the Hektograph Company should convey the strip of land desired by the Contract Company, and, accordingly, the attorneys for the Contract Company prepared and the parties executed on March 8, 1909, a contract of purchase and sale. The closing of title was set for May 4, 1909. The purchase price was $40,000, of which $4,000 was paid down to Gambier's attorney, the balance to be paid to Gambier's attorney in cash on the passing of title. The contract contained the following provision: "In case of failure of title the party of the third part [the Contract Company] shall pay rent for the said premises from the date of this contract until it shall commence condemnation proceedings at the rate of twenty-four hundred ($2,400.00) dollars per year, and the Four thousand ($4,000.00) dollars paid upon the signing of this contract shall be retained by the party of the first part [Gam-bier] and applied on such rental, and the balance returned to the party of the third part." The Contract Company immediately entered upon the premises under the contract.

Between the date of the contract and the date set for closing, the defendant Strong, a nephew of Charles H. Green, appeared upon the scene. On April 16, 1909, Strong's attorneys wrote Gambier a letter setting forth the claim that Lilla A. Green had left all of her real and personal property to Strong by a will which had been destroyed after her death, and that, therefore, the land held by Gambier as trustee was really held by Gambier as "a mortgagee prior to foreclosure" and that the equity belonged to Strong. On the date set for passing title, the Contract Company refused to perform on the ground that Gambier could not give good title and several adjournments were had. On May 15, 1909, eleven days after the first date set for closing title, a judgment creditor of Charles H. Green commenced an action against Gambier and others to have it determined that the property in question was the property of Green. On June 7, 1909, Strong commenced an action against Gambier and others to establish the lost will of Lilla A. Green and to have her deed to Gambier declared a mort-

gage. The Contract Company, finding that it could not get title from Gambier, commenced negotiations with all other parties interested for the purpose of acquiring not only the right of way but the balance of the parcel. These negotiations culminated in a contract of May 25, 1910, to which all persons having any possible interest in the property were parties, with the exception of Gambier. The purchase price for the entire tract was $70,000. Unsuccessful efforts were made by the Contract Company to induce Gambier to join in the contract of May 25, 1910. On this same day, May 25, 1910, the Contract Company wrote a letter to Gambier reviewing the whole situation, urging and demanding that he join in the contract and execute a quitclaim deed, and in this letter said: "Independently of this offer and demand, we call your attention to the fact that under the contract first hereinbefore referred to, you received the sum of four thousand dollars as a first payment for the property covered by the contract. Of this sum of four thousand dollars, you are entitled to receive the sum of eight hundred dollars, being the amount of rental stipulated therein from the time of the execution of the contract until the time that it was finally ascertained that you could not make title and the said contract was abandoned. The difference, to wit, the sum of thirty-two hundred dollars, we now demand that you return to us."

In the meantime, on July 17, 1909, Gambier filed an answer in the *Strong* case, alleging that he held the property as trustee, and asserting ownership and right to the possession thereof. On December 31, 1909, Gambier, through his attorney, notified the Contract Company as follows: "So far as the old contract is concerned, my client was at the time of the proposed closing of the contract ready and willing and able to give you a clear title. This you refused to take on the advice of the Title Guarantee & Trust Company. After that we adjourned the closing at your request a number of times and finally you did not even make a tender of the amount of the contract and have since changed your entire route over this property. Under these circumstances, for the present at least, we must claim that you have forfeited all rights under the previous contract."

On August 19, 1910, Gambier instituted an action of eject-

ment against the Contract Company. Both by the complaint in that action and by affidavit therein Gambier maintained the position he had always taken, that he was the owner of the premises and entitled to the immediate possession thereof. On October 27, 1911, a decision was rendered in the action brought by Strong, in which it was found, among other things, that Gambier never had possession of the premises; that the deed from Lilla A. Green to himself was, in fact, a mortgage to secure loans aggregating $8,300 and interest, and that Strong owned the premises as the devisee of Lilla A. Green. This judgment was subsequently modified by the Appellate Division (155 App. Div. 294) and as modified was affirmed by the Court of Appeals (215 N. Y. 690). The modification related only to the amount of the mortgage. Meanwhile, this present action was commenced March 10, 1913. Gambier answered on June 4, 1913, denying that he did not have title to and right of possession of the premises, and denying that he was unable to make good title to the property under the contract of March 8, 1909. Subsequent to July 14, 1915, all of Gambier's rights as mortgagee in the premises were extinguished by the full payment to the Merchants' Exchange National Bank of the amount which the Court of Appeals decided was a lien against the premises in question by reason of Gambier's deed.

It must be apparent from this recital of the facts, involved as they are, that Gambier as an individual never had the slightest moral claim to any part of the purchase price or rental of these premises. He was simply an employee of the bank, serving as a dummy mortgagee for the benefit of the bank, and until the bank's loans to Green were repaid Gambier had no more right to the property or its proceeds than any other clerk in the bank or any other stranger to the transaction. Therefore, if Gambier is to be permitted to retain as an individual and use for himself the $4,000 down payment under a contract in which he was neither personally interested nor never able to carry out, it must be by the overpowering force of some unreasoning technicalities of the law running counter to the commonly accepted notion that one can neither have nor withhold something for nothing.

An examination of the legal grounds relied upon by appellant

Gambier discloses no impelling necessity for such an inequitable result. It is contended that Gambier gave the Contract Company possession of the property, and, therefore, under the contract, as title failed, the Contract Company was obligated to pay Gambier $200 per month rental until the commencement of condemnation proceedings, and as no condemnation proceedings were instituted Gambier is entitled to retain the entire $4,000 down payment as rent. There are two answers to this contention. One is that the word "possession" in the contract means lawful possession. This is established both by the context and the surrounding circumstances in the light of which the contract must be construed. Possession of land means more than a naked right to trespass thereon. Bouvier, in his Law Dictionary (Vol. 2 [Rawle's Rev.], p. 703) defines "possession" as follows: "By the possession of a thing we always conceive the condition in which not only one's own dealing with the thing is physically possible, but every other person's dealing with it is capable of being excluded."

In *Sullivan* v. *Sullivan* (66 N. Y. 37) "possession" is defined as "something more than a mere right or title, whether to a present or future estate. It implies a present right to deal with the property at pleasure and to exclude other persons from meddling with it." (See, also, *Bailey* v. *Bond*, 77 Fed. Rep. 406, 408; *Fuller* v. *Fuller*, 84 Me. 475; 24 Atl. Rep. 946; *Smith* v. *Glenn*, 40 Wash. 262; 82 Pac. Rep. 605.) The contract reads: "Upon the signing of this contract *possession* of the said property *shall be delivered* to the purchaser, who shall be at liberty to enter thereon and to make any changes and improvements therein, and to clear the said ground and to use the said property in the construction of a railroad." This is no mere naked permission to go upon the property regardless of any legal right to remain there. The use of the words "possession of the said property shall be delivered to the purchaser" is a covenant on the part of the seller to place the buyer not only in physical, but in lawful possession of the premises. Assuming that the Contract Company, entering under the contract, was not a trespasser *ab initio*, it obtained no lawful possession in the sense that it was enabled to deal with the property in its own right and to exclude other persons from interfering with such use. The

only way in which it was able to exclude the lawful owner from interfering with its use of the property was by purchasing it from the lawful owner. Remaining in possession against the will of the owner amounted to a trespass. Only lawful possession could benefit the Contract Company. The physical holding of the property under a trespass was worse than useless to it. If it had lawful possession of the property and Gambier's title was assailed by outsiders it could cause the railroad company to condemn. Being in lawful possession, the railroad company could continue to hold the property during condemnation proceedings upon depositing security under section 3379 of the Code. If, however, the Contract Company did not obtain lawful possession from Gambier, but became a trespasser upon the assertion of title by the real owner, it was worse off by reason of its entry upon the property than it would have been if the railroad company had commenced condemnation proceedings and obtained the immediate right of entry therein; for, if it expended money on improvements on the property, it would eventually have to pay to the owner not only the value of the land but the value of the improvements placed by it upon the land. (*Village of St. Johnsville* v. *Smith,* 184 N. Y. 341, 345.) It must be assumed that the Contract Company was contracting for something which would be of value to it. It cannot be assumed that it was ready and willing to pay such a substantial sum for nothing. Lawful possession was of the essence of the contract. Gambier, having stated that he had the right of possession, and having undertaken to deliver possession, cannot compel the Contract Company to pay for a supposed right of possession that he never had or for a lawful possession that he never delivered.

In the next place Gambier is estopped from claiming the $4,000 as rent. The only contingency under which rent was to be paid was in case of failure of Gambier's title. Gambier maintained from the first that he had title and denied down to the day of the trial of this action that there had been any failure of title. He asserted ownership in his answer in the *Strong* case July 17, 1909, in his attorney's letter December 31, 1909, in his complaint in the ejectment suit, verified August 19, 1910, and in his answer in this action. During the trial of this

action he for the first time asserted his claim to retain the $4,000 as rent, and, as we have seen, there was no provision for rent except upon failure of title. Upon familiar principles Gambier is estopped from this change of ground after litigation has begun and particularly so where a failure to maintain the rule would work an inequitable result.

Gambier next claims that as there was a question raised with respect to his title, which the Contract Company's attorneys evidently thought might be serious, and, as the contract itself provided for the possibility of a failure of title, there is a good consideration for the Contract Company's agreement that he should in the event of failure of title retain the $4,000, either in whole or in part, and that the case in this aspect is analogous to the purchase of a doubtful claim. This argument leaves out of account the two cardinal facts that Gambier stated to the Contract Company that he had the right of possession and that the contract was entered into by the Contract Company in the belief that such statement was true. Full effect is given to the clause in the contract providing for the payment of rent in case of failure of title by interpreting it to cover the not uncommon case where it turns out at the time fixed for closing a title that a fee title can only be sustained by evidence *dehors* the record, in consequence of which the title is not marketable. In other words, Gambier's right to possess the property and deliver possession might have been full and complete and yet he might have been unable to deliver a marketable title. In such case, the purchaser was willing to pay for the lawful possession contracted for.

Finally, it is contended on behalf of the appellant Gambier that the plaintiff is estopped from showing that Gambier had neither title nor right of possession, because plaintiff's assignor was either Gambier's tenant or his vendee in possession. As already pointed out, Gambier is himself estopped from asserting that the Contract Company was his tenant. The question then is whether a vendee in possession is estopped in an action to rescind on the ground of mistake from showing that his vendor had no title. This rule of estoppel contended for proceeds upon the equitable theory that one shall not hold that which he has received from another by denying that the

other had the right to give it to him. It does not arise where the possession of the thing is not in issue or where such possession was not given by the party seeking to assert the estoppel. In an action to rescind a contract on the ground of mistake, where possession is not in issue, continued possession does not create an estoppel, but is either evidence of an intent to affirm, or goes to the inability of the plaintiff to make restoration. All that is necessary is restoration or placing in *statu quo*. An offer to restore is unnecessary if there is nothing to restore. In the present case there was nothing to restore, as plaintiff's assignor got nothing from Gambier. He had never been in possession, so it is a mere form to speak of restoring possession to him. Plaintiff is, therefore, not estopped from showing that Gambier had neither title nor right of possession.

If it be said that allowing the plaintiff to recover the money that was paid to Gambier under a clear mistake will be to permit the plaintiff's assignor to avoid any payment for the use of the land between March, 1909, the date of the contract with Gambier, and May, 1910, when the real owner was bought out, and that it is just as inequitable that the plaintiff's assignor should have something for nothing as it is that Gambier should, the answer is that such is not the necessary result at all. In the first place, the owner Strong could undoubtedly recover for the value of the use and occupation of the premises, unless estopped by his own course of dealing with plaintiff's assignor as disclosed by the record. Further, it appears in the record that plaintiff's assignor and the defendant Strong have stipulated to divide the amount recovered in this action, and the proportion payable to defendant Strong doubtless represents his estimate of the value of the use that plaintiff's assignor made of his land for the fourteen months in question. Thus an equitable result is worked out, whereas were Gambier permitted to retain any part of the $4,000 paid to him under mistake and as the result of his own misstatement, the processes of equity would have resulted in what would clearly be his unjust enrichment.

The judgment appealed from should be affirmed, with costs.

Judgment modified as stated in opinion, and as modified affirmed, without costs. Order to be settled on notice.

# CASES REPORTED WITH BRIEF SYLLABI

AND

## DECISIONS HANDED DOWN WITHOUT OPINION.