Ronald E. Coleman, J.
Under a separate decision we have made an award to the claimant for the appropriation of all his land and improvements. We discuss here a question raised concerning the value of tanks located on the property appropriated.
Claimant’s property consisting of 27,578 square feet was located on the northerly side of East Main Street in the Village of Marathon, Cortland County. The population of the village was 1,695 and it was the trading center for a rural area taking in the southerly part of Cortland County. On the property claimant conducted a bulk gasoline and fuel oil business. It was improved with buildings, gravel parking and driving area and four 1,000-gallon vertical and two 4,000-gallon horizontal tanks with necessary valves, fittings and connecting pipes to receive bulk fuel and distribute it to trucks. The tanks had been erected on steel and cement structures, were approximately 24 years old and had an estimated life of 50 years. The claimant and the State urged upon us different methods of valuing the tanks. The property was the type on which reproduction cost, less depreciation, together with land value, was the proper method to use as all agreed that there were no available sales of a comparable property.
An expert for the claimant testified that the reproduction cost of the tanks together with all appurtenances was $56,871 to which he applied an 8% depreciation figure to determine the value of the tanks at $52,322 when appropriated. The State urged upon us that we should consider only the cost of erecting other facilities to replace those appropriated, contending that claimant’s tanks were a type no longer manufactured. The State’s expert testified that a substitute facility could be erected for $15,285.09. The Attorney-General then urged upon us that the 48% depreciation figure previously testified to by the State’s real estate expert should be applied to this figure which would make the value of the tanks $7,948.25 and the value of claimant’s whole property at the time of the appropriation was $15,314.25.
Aside from cases involving public condemnees, we know of no case which has extended the doctrine of substitute facility as a measure of just compensation to improved property. In Winston v. United States (342 F. 2d 715, 724) the court said: “It is ‘ Hornbook ’ condemnation law that just compensation is measured by the value of what the Government takes, not what the owner loses.” In a case where private facilities were acquired for public use the court said “ an award premised upon the substitute facility doctrine, is likely to represent a negation of the fundamental principle of what the owner has *208 lost, and be based instead upon what the condemnor has gained.” Matter of Port Auth. Trans-Hudson Corp. (27 A D 2d 32, 42).
If indemnity were to equate just compensation as suggested by the State, then to the cost of replacing the tanks would have to be added other damages incident to the substitution such as moving expenses, business losses, loss of profits and other necessary expenses incurred during the business transition in order to be able to say that claimant had been indemnified for his loss sustained as a result of the appropriation. Further, on this record we are unable to determine whether the suggested substitute facility can be said to replace what was taken. The State expert did not know the gauge of, or' other essential information about, the appropriated tanks as installed which in our opinion would be necessary to determine whether or not the substitute tanks would serve the need as well as and for the same period of time as the tanks appropriated.
Claimant purchased the property in 1957 for $26,500 as shown by the deed stamps. At the time of the appropriation the property was in good condition, having been well maintained. We cannot say, as urged by the State, that the property was worth $11,185.75 less in 1965 than when purchased some eight years before, following which there was a period of rising-real estate values. While we have considered the testimony of the State’s expert, it is not very convincing. At the time of the appropriation, there would have been a market for claimant’s bulk plant had he wanted to sell it. While a willing buyer would have considered the cost of a substitute facility, he also would have wanted to know if such was a suitable substitute and he would have weighed the fact that claimant’s property had been the only one serving- the bulk fuel need in this rural area for at least 24 years and could have continued to serve this need for at least 26 years more. All these facts would have been considered by a buyer in determining what he would have been willing to pay for claimant’s property prior to the appropriation. Claimant’s property had as its best available use the one to which it was being put, as evidenced by the gross earnings:

While we adopt the reproduction cost placed on the tank facilities by the claimant’s expert, we do not accept his 8% deprecia *209 tion figure. Based on an average life use of this type of property of 50 years, we find the depreciation rate to be 48%. On all the credible evidence, we find the reproduction cost of claimant’s tanks at the time of the appropriation to be $56,871.
The real estate expert for the State failed to give proper weight to site preparation as well as to the value of the land as enhanced by the use to which it was being put (Village of St. Johnsville v. Smith, 184 N. Y. 341). At the time of the appropriation we find the value of the land to be $10,000', the buildings $2,000, the tanks $29,572.92, and the total for the land and improvements $41,572.92.